# IN RE KOPROWSKI
## KOPROWSKI v. MEGEATH COAL CO.

(No. 1903; June 6, 1935; 46 Pac. (2d) 61)

For the employer and appellant, there was a brief by *T. S. Taliaferro, Jr.* and *A. L. Taliaferro*, of Rock Springs, and oral argument by *T. S. Taliaferro, Jr.*

336

For the claimant and respondent, there was a brief by *Ray E. Lee*, Attorney General; *Thos. F. Shea*, Deputy Attorney General, and *Wm. C. Snow*, Assistant Attorney General, all of Cheyenne, and oral argument by *Glen G. Stanton*, of Rock Springs, and *Wm. C. Snow*, of Cheyenne.

*T. S. Taliaferro, Jr.* and *A. L. Taliaferro* in reply.

RINER, Justice.

The district court of Sweetwater County, through an order form signed by the judge May 29, 1934, and filed June 1, 1934, made an award under the State Workmen's Compensation Law for temporary total disability and also for permanent partial disability, in favor of Albert Koprowski, in the matter of his claim for compensation for injuries alleged to have been sustained while an employee of The Megeath Coal Company while working in its coal mine in the county aforesaid. For the sake of brevity and convenience Koprowski will be hereinafter usually mentioned as the "claimant" and The Megeath Coal Company as the "employer." The latter, dissatisfied with the award, has brought the record made in the matter to this court by direct appeal, assigning as error: (1) That the evidence fails to show that the workman suffered any disability as a result of any accident or injury occurring while engaged in the duties of his employment; and (2) that the award on account of permanent partial disability is based upon a percentage of the sum allowed by law for permanent total disability, contrary to the provisions of Section 124-120, paragraph (a), W. R. S. 1931.

These are the material facts: On February 3, 1931, the claimant, a miner, was working in a room of the employer's coal mine getting out coal, and to use his own language given on the witness stand:

"I had been moving a big chunk of rock out of my way. It rolled over between the car, a big pile of rock, and one scraped my leg, and so I protect myself by having to move that rock on the side, and then about three o'clock in the afternoon, when I was lifting the rock, I feel a big pain in my back, sir, and I fall down to my knees, and then I feel pain in my back pretty bad, and I couldn't move around without much pain in my back, sir."

The next day he went to a physician and surgeon in Rock Springs, Wyoming, employed by the Labor Union, of which claimant was a member. He remained under his care until he was discharged on February 16, 1931. The next day claimant went to an osteopathic physician and surgeon and received treatment from him. In the following month of March he came under the care of Doctors Lauzer and Sanders, physicians and surgeons of Rock Springs, who examined him, took certain X-ray pictures of his back and prescribed medical and surgical care for him for the most part until the matter was finally disposed of by the award in question. In the interim he seems to have gone to the Fitzsimons General Hospital at Denver, Colorado, and remained there for treatment and care by the medical and surgical staff of that institution from sometime in April, 1931, to the month of June in that year. At the request of the employer the claimant was also sent to a Dr. Ossman of Salt Lake City in November, 1931, for examination as to his physical condition. On the 2nd of that month his body appears to have been given a very complete investigation by the doctor named and four other physicians and surgeons, who were present then. Additional X-ray pictures were taken of claimant's spine at this time. He was examined also on different occasions by other local physicians and surgeons residing in Rock Springs. Pursuant to court orders previously made, appointing them for that purpose, four more physicians and surgeons, residing in Denver, Colorado, made a neurological and general physical examination of claimant, and also an X-ray examination of his spine was then additionally made; under date of December 18, 1933, these doctors transmitted their conclusions as to his condition to counsel for the employer, the report being sworn to by them. This report it was stipulated by the parties in the course of the trial should be received in evidence

without objection, and it was accordingly made a part of the record in the case.

Recurring now to the proceedings had in the district court, on February 21, 1931, the employer by its superintendent, filed its positive, verified "Employer's Report of Accident," in which it was stated, among other things, that Koprowski "claimed he was moving a rock and sprained his back"; that there was temporary total disability on his part as the result of the injury; and in response to the question, "Will the employer dispute the workman's claim if made in accordance with Workmen's Compensation Act, State of Wyoming?" the answer "No" was given. On June 29, 1931, the workman filed his verified report of the accident and application for compensation. His description of the cause of the accident in that report was,

"I was moving a big rock about 3 o'clock in the afternoon and when I lifted the rock I felt a pain in the back and I fell to my knees and could not move without much pain. My back was very sore."

He also reported that the nature of the injury was "strained muscles of the back" and that it grew out of his employment in digging and loading coal.

On October 15, 1931, a hearing was had in the matter before the court without a jury, and the testimony of the claimant and five other witnesses in his behalf was received. On November 9, 1931, the matter was again taken up by the court and the testimony of four physicians and four employees of The Megeath Coal Company was given on behalf of the employer, and the hearing was continued to a subsequent date. On June 20, 1932, a considerable amount of additional testimony was taken on behalf of both parties, both orally and by deposition.

The trial court took the case under advisement upon briefs to be filed. Thereafter, by an order form dated

May 11, 1933, filed May 13, 1933, an award was made claimant for temporary total disability for the period from February 3, 1931, the date of the accident, to June 20, 1932. In connection therewith the court found that the claimant was injured on February 3, 1931, in Sweetwater County, while in the employ of The Megeath Coal Company and while moving a rock, as alleged in claimant's application for an award; that he sustained an injury to his back and spine, involving the vertebrae, the exact nature of the injury being then not determinable; that said injury was not caused by the culpable negligence of the employee; and that he was entitled to compensation for temporary total disability for the period above mentioned, in a stated sum, which was ordered paid from the State Industrial Accident Fund, as provided by law. The order further provided that the court should retain jurisdiction of the case, the power being reserved to award further compensation for temporary total disability, permanent partial or permanent total disability. The employer saved its exceptions to this order, but does not appear to attack it at this time, assuming that this could properly now be done.

Subsequently and on April 10, 1934, the matter was again before the district court for the introduction of additional oral testimony on behalf of both parties, and the reception in evidence of the sworn report of the Denver medical men previously mentioned. The case was thereupon finally submitted to the court for disposition, and by an order form dated and filed as hereinabove recited, a final award was made in favor of the claimant. The court found therein that as a result of the injury sustained by Koprowski on February 3, 1931, as described in the previous order of award, he was totally disabled and unable to perform work at a gainful occupation from June 20, 1932, to October 1, 1933, and that he sustained permanent par-

tial disabilities equal to twenty-five per cent of total permanent disability. It was accordingly ordered that the claimant be awarded and paid as directed by law and this order,—temporary total disability for the period thus indicated, at a fixed rate per month and in a lump sum, and also that the sum of $1,000.00, that amount being twenty-five per cent of the full sum of $4,000.00 allowed by law for permanent total disability, should be awarded him, to be paid at the rate of $50.00 per month. It is this order whose propriety is questioned by the appeal proceeding at bar.

It is contended that the evidence fails to show that the claimant was ever injured in the employment of The Megeath Coal Company. It cannot be truthfully denied, of course, that Koprowski on February 3, 1931, was working as a miner in the coal mine operated by that company. The only point left to be resolved is whether he was injured in the course of his labor in the mine on that date. The evidence in the case, oral, documentary and by deposition, is chiefly concerned with the solution of this problem. We have already recited the claimant's own story of what happened on the date aforesaid and the injury he claimed to have then sustained. Other witnesses corroborated his testimony in that he complained of his back after quitting work that day and that he appeared to be suffering pain and that there were large rocks in the room where claimant was working on said date. Two reputable physicians and surgeons of Rock Springs, who examined him about a month after February 3, 1931, testified that claimant was suffering from a compression fracture affecting the twelfth and eleventh dorsal vertebrae and that X-ray photos taken by them disclosed this fact, as well as that loose bone spicules were lying between the vertebrae; they testified also that this fracture could be caused by claimant lifting

a large and heavy piece of coal or rock, and that he was not suffering from arthritis.

It is true that a considerable number of other witnesses, appearing on the witness stand for the employer, stated that there were no large rocks where the claimant was working; that he stated he wanted to go back to work shortly after February 3rd; that he never said anything about being hurt. It is true, too, that many reputable medical men and surgeons and X-ray specialists testified that the claimant was suffering from no injury to the bones of the spine; that his ailments were due to arthritis and infection; and that a compression fracture could not be caused by lifting.

In McMahon v. Midwest Refining Co., 36 Wyo. 90; 252 Pac. 1027, this court, referring to the testimony in that case, said:

"The record discloses that an X-ray picture was taken under the direction of Dr. Kamp. Dr. Lathrop testified that this picture disclosed an injury to the workman's back. Dr. Kamp testified that it disclosed nothing of the kind. Where the physicians could not agree, it is hardly to be expected that this court could decide the dispute between them. It is accordingly clear that there is a hopeless conflict in the testimony on the main points in issue in this case, and it is hardly necessary to say that where there is substantial evidence to support a judgment, as there is in this case, this court will not reverse it. We have already decided that this rule applies to cases under the Workmen's Compensation Act. Standard Oil Co. v. Sullivan, 33 Wyo. 223, 237 Pac. 253. And we have no reason to depart from that ruling."
See also Karos v. Ocenas, 34 Wyo. 357, 243 Pac. 593.

In Jenkins & Reynolds Co. v. Alpena Portland Cement Co., 147 Fed. (C. C. A. 6th Circuit) 641, the court in discussing what was meant by the expression "substantial evidence," quoted from the opinion in

Minahan v. Grand Trunk Western Ry. Co., 138 Fed. (C. C. A. 6th Circuit) 37, to the effect that it was: "Something of substance and relevant consequence, and not vague, uncertain, or irrelevant matter, not carrying the quality of 'proof,' or having fitness to induce conviction," and then said:

"What constitutes such evidence may be indicated in another way. If the evidence favoring such facts of the plaintiff's case is such that reasonable men may fairly differ as to whether it establishes them, then it is substantial. If, however, it is such that all reasonable men must conclude that it does not establish them, then it is not substantial. We gather this from these words of Mr. Justice Lamar in the case of Grand Trunk R. Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485:

" 'When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court.' "

See also Milford Copper Co. v. Industrial Commission, 61 Utah 37, 210 Pac. 993; Thomson v. Virginia Mason Hospital, 152 Wash. 297, 277 Pac. 691.

As already intimated, assuming that the question whether claimant was injured in the employment of The Megeath Coal Company was not foreclosed by the award order of May 13, 1933, (See Sec. 124-140 W. R. S. 1931; Midwest Refining Co. v. George, 41 Wyo. 55, 281 Pac. 1005), which was apparently not complained of by the employer, no attempt to review it being made, it is very plain from the brief outline of the evidence in the case given above that the court had before it an irreconcilable conflict therein, with substantial evidence to support a disposition of the case in favor of either the claimant or the employer. That being so, under the decisions hereinbefore cited

and many others of similar purport which could be, this court cannot interfere with the judgment of the trier of facts, who saw and heard most of the witnesses on the stand. The contention of the employer on this point cannot be upheld.

It is also urged for The Megeath Coal Company that the district court erred in fixing the award in favor of the claimant for permanent partial disability at twenty-five per cent of the amount allowed by law for permanent total disability, and that by so doing, the statute governing the matter was ignored.

So far as the evidence in the case is concerned, it is manifest, we think, that there was a substantial amount thereof in the record to support the district court's finding that the claimant had suffered a twenty-five per cent permanent partial disability as a result of the injury he incurred on February 3, 1931. Dr. Lauzer in his testimony stated that the claimant was disabled thirty per cent of total disability and that this was permanent. Dr. Sanders fixed his disability in that respect at seventy-five per cent. The sworn report of the four Denver doctors already referred to, after mentioning the work of an X-ray specialist who collaborated with them, concludes as follows:

"We have carefully reviewed his findings and are unable to find any bony injury of the spine. Any injury he may have sustained must therefore be to the soft tissues.

"After reviewing all the available facts, it is our belief that he is permanently disabled to the extent of 25%."

In this connection, relative to the first contention of the employer above considered, it may be additionally noted that it is significant that these medical men did not find that Koprowski was not injured at all; their finding was that there was no "bony" injury to claimant's spine and that his injury must be one only to

the soft tissues. This injury they said was to the extent of twenty-five per cent, as we interpret their statement. There is substantial testimony in the record also to support the court's award for temporary total disability on the part of the claimant from June 20, 1932, to October 1, 1933. Dr. Lauzer and Dr. Sanders both indicated in their statements given as witnesses for the claimant at the hearing had on April 10, 1934, that claimant had been totally incapacitated from performing any work at any gainful occupation for the period covered by the final award on that point.

Turning now to the statutory provisions dealing with the matter, Section 124-120 W. R. S. 1931, the material portions thereof to be at this time considered are these:

"Each employe, who shall be injured in any of the extrahazardous employments as herein defined, * * * shall receive out of the industrial accident fund, compensation in accordance with the following schedule; * * *

"(a) 'Permanent partial disability' means the loss of either one foot, one leg, one hand, one arm, one eye, or the sight of one eye, one or more fingers, one or more toes, and dislocation where the ligaments are severed, or any other injury known to surgery to be permanent partial disability. For any permanent partial disability hereinafter specifically described, resulting from an injury, the workman shall receive a lump sum as follows:"

The statute then lists a number of injuries to the arms, hands, legs, feet, etc. and indicates the "lump sum" which shall be allowed for each injury so scheduled, but does not undertake to enumerate permanent partial disabilities known to surgery in connection with either the trunk, the skull or the brain of the body. The section then continues:

"For any other injury known to surgery to be permanent partial disability, the workman shall receive

a sum in the amount proportional to the extent of such permanent partial disability based as near as may be upon the foregoing schedule."

That part of the section subdivided as "(b)" and appearing in the section subsequent to the listed injuries just mentioned, provides *inter alia* that:

"When permanent total disability results from the injury the workman shall receive the sum of four thousand dollars ($4,000.00)."

The contention for the employer, as we understand it, is that no evidence in the record shows "what relationship 'the permanent injury' bears to any schedule fixed by the statute for 'permanent partial disability,' "—in other words, that because the law does not specifically list the amount which shall be paid for an injury to the spine, known to surgery as permanent partial disability, and because the evidence does not show its relationship to any of the injuries appearing in that schedule, the district court erred in awarding twenty-five per cent of the amount allowed by law for permanent total disability. We cannot believe that the legislature intended by the language used in the statute any such consequence.

The employe who is injured in an extra-hazardous employment the statute declares shall receive compensation in accordance with "the following schedule." That schedule prescribes awards for temporary, total, permanent partial and permanent total disability. As we have seen from the excerpts taken from the law of this state, as recited above, permanent partial disability is stated to mean not only "the loss of either one foot," etc., but also "any other injury known to surgery to be permanent partial disability." The maximum compensation for those injuries listed in the permanent partial disability schedule affecting arms, legs, hands, feet and eyes, is definitely fixed by the

statute, but the award to be made "for any other injury known to surgery to be permanent partial disability" the law says shall be "a sum in the amount proportional to the extent of such permanent partial disability *based as near as may be* upon the foregoing schedule." We have italicized these words of the statute because they are especially to be noted in view of the fact that no injuries like those now involved are specifically listed either by description or by amount of award indicated for them.

Concerning the Federal practice act, which was phrased: "The practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the circuit and district courts, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the state within which such circuit or district courts are held, any rule of any court to the contrary notwithstanding," the National Supreme Court said in Indianapolis & St. L. R. R. Co. v. Horst, 93 U. S. 291, 300, 23 L. Ed. 901, that:

"The conformity is required to be 'as near as may be,' not as near as may be possible, or as near as may be practicable. This indefiniteness may have been suggested by a purpose; it devolved upon the judges to be affected the duty of construing and deciding, and gave them the power to reject, as Congress doubtless expected they would do, any subordinate provision in such state statutes, which, in their judgment, would unwisely incumber the administration of the law, or tend to defeat the ends of justice, in their tribunals."

This language was reiterated in Phelps v. Oaks, 117 U. S. 236, 29 L. Ed. 888. Again in Hills & Co. v. Hoover, 220 U. S. 329, 31 Sup. Ct. 402, 55 L. Ed. 485, referring to the same statutory language, this was said:

"This section is intended to secure on the law side of the Federal courts the practice which prevails in like causes in courts of the states. Its requirement is that such proceedings shall conform 'as near as may be' to that prevailing in the state courts 'in like cases.' This section was not intended to require the adoption of the state practice where it would be inconsistent with the terms or defeat the purposes of the legislation of Congress. Luxton v. North River Bridge Co., 147 U. S. 337, 338, 37 L. ed. 194, 195, 13 Sup. Ct. Rep. 356; Chappell v. United States, 160 U. S. 499, 512, 40 L. ed. 510, 514, 16 Sup. Ct. Rep. 397."

It is apparent to us that the legislature by refraining from going into details concerning every kind of permanent partial disability "known to surgery" which the human body may suffer through accident in extra-hazardous employment and the amount of award to be made therefor—something not so very easily accomplished in a statute—intended that the judges of the district courts of the state, whose duty it would become to construe the law and make the proper awards, should not permit the listed schedule of permanent partial disability injuries and the designated awards for them to "defeat the ends of justice," as to other permanent partial disability injuries to the body not thus listed. It is easy to see that a proportional award based on the statutory schedule of awards for permanent partial disability, for example on account of partial stiffness of an arm, can be made. The schedule indicates the award for loss for an arm above the elbow. As between such loss of an arm and its partial stiffness proportions can be reasonably supplied through evidence. How proportions could be thus furnished as between a derangement of the spine and the loss of an arm, a foot, an eye or a hand, injuries totally dissimilar in character, is not perceived. Should the claimant in consequence be left remediless? Shall the injured workman with permanently partially injured

skull or brain or spine, as recognized by surgery—grave as these injuries frequently are—be denied an award because it is impossible to invoke the particular statutory schedule dealing with totally unrelated injuries, while the workman who loses his finger or his toe shall be promptly compensated? In our judgment the legislature never intended that an affirmative answer be given these questions by the courts.

Section 124-120 fixes the amount which shall in every case be received by a workman for an injury resulting in total permanent disability. We think it deducible from the language of Section 124-120, supra, taken as a whole, that when a workman suffers an injury known to surgery as permanent partial disability and which is not listed in the schedule of the statute, and it is of such a character as not to be proportionally referable to any injuries specifically named therein, the district court is authorized, upon substantial evidence, to do as was done in the case at bar, i. e., to allow a proportional amount of the statutory sum for a total permanent disability award. Indeed we do not see how any other course could be pursued in a reasonable interpretation of the statute. By so doing the judicial department of the government will, as we see it, carry out the plain legislative intent that such injuries were not to go uncompensated, and the evident purpose of the law will be upheld. It has already been declared by this court that the Workmen's Compensation Act should be liberally construed to accomplish its beneficent ends. In re McConnell, 45 Wyo. 289, 18 Pac. (2d) 629, and cases cited. Additionally it may be observed that the amount awarded for permanent partial disability in this case is, in so far as the sum itself is concerned, not disproportionate to the amounts fixed by the law as awards for the scheduled injuries of that character.

Our conclusion is that the order of award appealed from must necessarily be affirmed, and an order to that effect will be entered.

*Affirmed.*

KIMBALL, C. J., and BLUME, J., concur.