CONTINENTAL SUPPLY COMPANY v. PEOPLE

(No. 2100; March 21, 1939; 88 Pac. (2d) 488)

For the plaintiff in error, there was a brief by *Hagens & Wehrli* of Casper, and oral argument by *Mr. W. J. Wehrli.*

For the defendant in error there was a brief by *Ray E. Lee,* Attorney General; *Thomas F. Shea,* Deputy Attorney General; and *Wm. C. Snow,* Assistant Attorney General, all of Cheyenne, and an oral argument by *Mr. Lee.*

BLUME, Justice.

This is an action to recover certain taxes alleged to be due the State of Wyoming under the provisions of the Use Tax Act of 1937, Chapter 118, Session Laws of Wyoming 1937.

The Continental Supply Company, defendant in the case below and plaintiff in error here, is a Delaware corporation engaged in the business of selling supplies to oil producers and operators and to persons engaged in drilling wells for the production of oil and gas. Its home office is in Dallas, Texas; it is authorized to transact business in Wyoming, and it maintains as its prin-

cipal office or place in Wyoming a store at Casper. It has three different places of business in the State. On or about June 9, 1937, the Corporation made application to the State Board of Equalization of Wyoming for a Certificate of Registration pursuant to Section 5, Ch. 118, Session Laws of Wyoming 1937. On September 3, 1937, a "Certificate of Registration and Authority to Collect Use Tax" was issued, addressed to the corporation's Casper Office.

During the months of June, July and August, 1937, the Corporation made various sales of merchandise to purchasers in Wyoming. Some of this merchandise was, doubtless, supplied from stock in the corporation's hands in its Wyoming stores. Other items, apparently not carried in local stocks, were ordered by the Corporation from its home office in Dallas, and by that office from dealers or manufacturers in other states. In most instances, apparently, shipment was made directly from the foreign dealer or manufacturer to the Wyoming purchasers, and in such cases the merchandise was at no time, at least directly, in the actual possession of the Corporation's Wyoming retailers. The merchandise involved in this action reached the purchaser in this state in all cases. The time taken up in filling the various orders does not appear, but judging from the testimony of the witness Gross, they were all filled in the regular, ordinary course of trade.

The appellant, from its office at Dallas, made a report on July 20, 1937, of the merchandise sold for storage, use or other consumption during June. Similar returns were made the following months. The appellant, however, failed to pay any use tax, except in those instances in which it had collected it, stating that the purchasers refused to pay it, claiming that the property purchased was exempt from the use tax. This action was brought as the result of such non-payment. The appellant defended on the ground that it is not

liable for the tax. The specific claims in that connection will be mentioned later. Trial was to the court without a jury. The court found in favor of the validity of the statute imposing the use tax, and rendered judgment against the appellant for the amount claimed by the plaintiff. An appeal has been taken from that judgment.

1. Section 4 of the Use Tax statute exempts certain merchandise from the tax, including merchandise which pays the sales tax under the laws of this state. Subdivision K of that section provides that there shall be exempt from the tax "machinery, equipment and industrial materials directly used * * * in mining * * * when such machinery, equipment and materials * * * are not generally stocked in Wyoming for sale or are not *promptly purchaseable* in Wyoming from or through a regularly established Wyoming individual, firm or agency registered as a retailer under this act." Counsel for plaintiff in error contend that the property in question here is property coming within the exception of the foregoing subdivision. We may concede, as claimed, that oil well supplies are used for "mining," and seemingly the property involved herein was not generally stocked in this state. No stress is laid on that point. So we must determine the point pressed herein, namely, whether or not the merchandise was "promptly purchaseable" from or through a retailer as contemplated in the subdivision. Counsel contend that it was not and that hence the exemption applies. They have given us many definitions of the term "purchaseable" and of the term "promptly." The gist of their argument is summed up in stating that "materials promptly purchaseable in Wyoming, in our opinion, are such as might be obtained by a purchaser in going to a store located in the state of Wyoming and paying or agreeing to pay, the purchase price and obtaining *then and there* the materials purchased," and that since the sup-

plies involved in the case at bar were not so purchase-able, the exemption clearly applies. The ordinary definition of "promptly purchaseable" would, doubtless, lead to such result. But definitions are often deceptive. Sometimes language conceals, rather than explains. A moment's reflection will show that the argument of counsel for plaintiff in error cannot be valid. If a man can go into a store in this state, pay or agree to pay the purchase price, and *then and there* obtain the goods, as counsel say, then the purchaser must pay a *sales* tax. There is then no room for a use tax. The use tax was intended to supplement or complement the sales tax. That aim of the law is of primary importance in construing the language of the subdivision under consideration. The use tax necessarily applies only to merchandise not already in the state, but brought into it directly or on order. It necessarily, in so far as retailers in this state are concerned, applies only to situations such as, or similar to those which, are presented in the case before us. Hence the term "promptly purchaseable" must be construed in that light, and there can be no reason for exempting property from the tax when the order is filled in the ordinary course of trade of that character, as seems to have been true in this case. It may be, as argued by counsel, that under the construction given it, the subdivision will have little or a very restricted meaning. But that is what the legislature probably intended, in view of the fact, as already stated, that the use tax was meant to complement the sales tax.

2. The title of the Use Tax Act is "An Act imposing an excise tax upon the storage, use or consumption of tangible personal property." Section 3 of the Act provides that "an excise tax is hereby imposed on the storage, use, or other consumption in this state of tangible personal property." Section 7 of the Act provides that the retailers coming within the Act must on

the 15th of each month make to the Board of Equaliza-
tion a. return of the sales made during the preceding
month of the goods sold, *the storage, use or consump-
tion of which is subject to the tax imposed by this Act."*
Section 4b provides that the tax shall not apply to any
"property, the storage, use or consumption of which
this state is prohibited from taxing under the constitu-
tion or laws of the United States of America * * * or
which is used or to be used in operating or maintaining
interstate transportation" etc. These provisions clearly
provide that the tax intended to be imposed was upon
the storage, use or consumption of property in this
state, and not upon property not yet within the State.
But section 6 of the Act provides:

"Every retailer maintaining a place of business in
this state, and making sales of tangible property for
storage, use or other consumption in this state, not
exempted under the provisions of section 4 hereof shall,
*at the time of making such sales* collect the tax imposed
by this Act from the purchaser." (Italics are ours.)

It is accordingly argued by counsel for plaintiff in
error that under the clause above italicized the tax
must be collected at the time the order is taken or is
accepted in the foreign jurisdiction; that is to say,
before any property of any kind has reached the state
of Wyoming, so as to be subject to the use tax; that
the clause, accordingly, interferes with interstate com-
merce and is void. Counsel for the State believe that
the contention is met by the case of Monamotor Oil Co.
v. Johnson, 292 U. S. 86, 78 L. Ed. 1141, 54 Sup. Ct.
575. In that case it appears that the Iowa legislature
imposed a license fee on all motor vehicle fuel used or
otherwise disposed of in the state. A report was re-
quired to be made of all such fuel imported into the
state. Some of that was not actually used in the state
and was reshipped, but a refund was made for all fuel
so. reshipped. The court held that under these facts

there was no substantial interference with interstate commerce. The case hardly meets the situation in this case, and we are inclined to agree with the argument of counsel for plaintiff in error that if the italicized portion of section 6 is controlling, there would be interference with interstate commerce. Weeks v. United States, 245 U. S. 618, 62 L. Ed. 513. The law here in question was taken from California as in force prior to 1937. The legislature of that state in 1937 perceived that the clause above italicized might lead to difficulties and added the clause "or, if the storage, use or other consumption of the tangible personal property is not then taxable hereunder, at the time such storage, use or other consumption becomes taxable hereunder." In other words, the California Legislature in 1937 made it clear that no tax should be collectible until the property should actually be in the state for storage, use or other consumption. We think, however, that substantially the same result which was reached in California by the amendment of 1937 may be reached under our law by striking out and holding the italicized portion of section 6 invalid. This we are permitted to do under the provisions of section 29 of the Use Tax Act, which provides:

"If any section, subsection, clause, sentence or phrase of this Act which is reasonably separable from the remaining portions of this Act is for any reason held to be unconstitutional, such decision shall not affect the remaining portions of this Act. The Legislature hereby declares that it would have passed the remaining portions of this Act irrespective of the fact that any such section, subsection, clause, sentence or phrase of this Act be declared unconstitutional."

We think that the clause in section 6 of the Act above italicized is clearly separable, and is in fact unimportant. It will leave a workable law, requiring the return and payment mentioned in section 6 to be made after the property has actually reached this state and is here

for storage, use or other consumption. The record does not disclose whether in any instance the appellant made a report of its sales, for the purpose of the use tax, before the property actually reached the state. Probably not, in view of the extensions granted it to make its returns. If that is not true, however, and too much penalty and interest has been assessed in view of our construction placed on the law, the plaintiff in error may, on application, have the correction made in the district court.

3. It is contended by counsel for plaintiff in error that the use tax is in violation of section 28 of article 1 of the State Constitution in that it discriminates between retailers who maintain a place of business in this state and other persons, e. g., peddlers; that it makes the former liable for the tax, but not the latter. It seems to be correct that such discrimination exists, although subdivision (f) of section 2 of the statute attempted to arrive at as great a uniformity as possible. It is readily seen, however, that it would be difficult to enforce the statute against peddlers and persons similarly situated. There is a difference in the very nature of things between persons maintaining a place of business in this state and persons who do not—for example, a peddler. Hence the classification cannot be held to be arbitrary.

4. It is further contended that the use tax is legally due from, and in the first instance imposed upon, the consumer, and that hence the vendor cannot be made liable for its payment, and that the state should have sued the purchasers. We are referred to National Ice & Cold Storage Co. v. Pacific Fruit Express Co. (Cal.) 79 P. (2d) 380. That case involved the sales tax on ice purchased under a contract which had been entered into before the Sales Tax Act became a law. That

statute made the retailer liable for the tax, granting him the right to collect it, in turn, from the purchaser. The court held, if we understand the decision correctly, that the statute could not have the effect of imposing the tax on the purchaser under such a contract. The decision can, perhaps, be better understood by also consulting People v. McDuffie (Cal.) 79 P. (2d) 386, in which the substance of the decision was that a "retailer making sales of tangible personalty under contract executed prior to effective date of statute imposing tax on privilege of selling tangible personalty, could not add the tax to the sale price and collect it from the buyer." We have no such situation as that before us.

Nor is it quite true, as contended, that the tax is primarily due from the consumer, instead of the retailer, except in the sense that the tax is a use tax. Section 3 of the statute provides that "every person storing, using or otherwise consuming in this state tangible personal property purchased from a retailer shall be liable for the tax imposed by this act." At the same time, by section 6 of the statute, the retailer is made equally liable; he is required to collect the tax, and it is provided that the "tax herein required to be collected by the retailer shall constitute a debt owed by the retailer to this state." Under the provisions of section 7 of the statute, the retailer must report and pay the tax. The question as to whether or not this duty may be imposed upon him has lately been decided in the affirmative by the Supreme Court of the United States in the case of Felt & Tarrant Mfg. Co. v. Gallagher, 59 Sup. Ct. 376, affirming 23 Fed. Supp. 186. In that case the court had under consideration the California law, from which our law was taken. An examination of that case, and the cases cited, will show that it has long been the practice for states to make use of

retailers or other agencies, for the purposes of enforcing taxes, and such practice has uniformly been upheld as valid. We do not think that we should rule to the contrary.

For the reasons above stated, the judgment of the district court must be affirmed, with the right granted to plaintiff in error as hereinabove set forth.

*Affirmed.*

RINER, Ch. J., and KIMBALL, J., concur.