RUTH S. LICHTY, on behalf of GLENN N. LICHTY, Deceased,

*Employee-Claimant and Appellant,*

vs.

LICHTY CONSTRUCTION COMPANY, a CORPORATION,

*Employer-Defendant and Respondent.*

(No. 2546; April 7th, 1952; 243 Pac. (2d) 151)

412

For the appellant the cause was submitted upon the brief of Franklin B. Sheldon of Riverton, Wyoming.

For the respondent the cause was submitted upon the brief of Harry S. Harnsberger, Attorney-General; Howard B. Black, Deputy Attorney-General and Paul T. Liamos, Jr., Assistant Attorney-General.

414

## OPINION

RINER, Justice.

The question to be determined in this case is what meaning the Legislature of this State intended should be given to certain words appearing in the Workmen's Compensation Law of Wyoming where the term "workman" is undertaken to be defined. It involves the proper application of those words in the Act aforesaid to the facts and circumstances of the case at bar as regards the disposition of the claim of Ruth S. Lichty for death benefits under said Law and also the claims of a physician and mortician for professional services rendered in connection with the matter.

The facts and circumstances aforesaid appearing in the case are undisputed; the parties having signed an agreed statement of facts which is before us as it was before the district court of Fremont County and which, together with the uncontradicted testimony of the claimant, Ruth Lichty, supplied the basis for the rejection of those claims by the lower court. The Workmen's Compensation Department of the State of Wyoming had

also previously ruled that these claims should be rejected.

The accident occurred March 20, 1950, about five miles west of Riverton, Wyoming, on U.S. highway 287. On April 5th, 1950, the doctor who was summoned to the scene of the accident filed his official report relative to the matter with the Clerk of the District Court stating that Glenn N. Lichty died as a result of the truck which he was driving going out of control, throwing him from the cab and then rolling over him causing a broken neck and crushed chest.

April 5th, 1950, the employer, the Lichty Construction Company, also filed with said Clerk its report of the accident; in describing how the injury occurred this was said: "pickup hit slick spot in the road, overturned, pinning workman underneath." It was also therein stated that the accident grew out of the man's employment which was that of manager and foreman on the construction work in which the Lichty Construction Company was then engaged; that the injury was fatal; this report was signed "Lichty Construction Company" as "employer by Ruth S. Lichty, Secretary-Treasurer;" said report having been sworn to by her April 4th, 1950.

The same day these filings were made Ruth Lichty, as the widow of Glenn N. Lichty, also filed with said Clerk her verified application and claim for an award of compensation under the Workmen's Compensation Law of the State of Wyoming, setting out substantially the information contained in the two reports mentioned above.

On April 6th, 1950, filed April 7th, 1950, the Manager of the Workmen's Compensation Department of this State, wrote the physician who made the report aforesaid that:

"It is our conclusion that Glen M. Lichty was not covered under provisions of the Workmen's Compensation

Law, as his status was that of employer rather than employee by reason of his being a director and president of the corporation, the Lichty Construction Company, at the time of his death."

April 12, 1950, the Clerk of the District Court wrote Mrs. Lichty that:

"The State Compensation Department advises that this Claim should be rejected, because Mr. Glenn N. Lichty was not covered under provisions of the Workmen's Compensation Law, as his status was that of employer rather than employee by reason of his being a director and president of the corporation, the Lichty Construction Company, at the time of his death."

Pursuant to section 72-112 W.C.S. 1945 Mrs. Lichty, as claimant made application on her claim for a hearing thereon by the District Court of Fremont County.

On April 19, 1950, the Workmen's Compensation Department's Chief Clerk sent a letter to E. E. Davis, the mortician aforesaid, advising him that Glenn N. Lichty was not covered by the provisions of the Workmen's Compensation Law for the same reason as set forth in the letters of the Clerk of the District Court and the manager of the Workmen's Compensation Department of this State, as above recited.

The district court aforesaid set the matter for hearing on May 9, 1950, and further ordered the employee claimant and employer defendant to be duly notified thereof. This order for a hearing was subsequently changed to fix the ultimate hearing date on October 8, 1951. On that date the claimant, Ruth Lichty and her counsel and the Workmen's Compensation Department represented by the Attorney-General of the State of Wyoming all appeared and trial of the matter was had before the court without a jury. As recited by the judgment thereafter entered October 24, 1951:

"The Stipulation of Facts signed by the claimant, her attorney, and the Attorney General, and filed herein,

was submitted to the Court as evidence and in addition thereto, the oral evidence of Ruth S. Lichty was submitted to the Court, and the claimant thereupon rested, and the Attorney General having rested, and the Court having heard the arguments of counsel and being fully advised in the premises . . ."

The court then found generally against the claimant and:

". . . particularly that, although the deceased, Glenn N. Lichty was killed while engaged in extra-hazardous employment on behalf of the Lichty Construction Company, he was at the time holding an official position with said company as a director and president thereof, and was therefore not covered as a workman under the provisions of the Workmen's Compensation law."

The judgment rendered was:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THE COURT that the claim of Ruth S. Lichty as the widow of Glenn N. Lichty, deceased, for death benefits, and the claim of E. E. Davis for funeral expenses, and the claim of Dale Ashbaugh for doctor's bill, filed in the above entitled cause, be and all of them are hereby denied."

From this judgment, upon due exception allowed, the instant appeal proceeding was prosecuted.

The stipulation of the parties, omitting recitals of appearance by counsel for the claimant and the Attorney-General, acting for and on behalf of the Workmen's Compensation Department of the State of Wyoming is as follows:

"* * * that the application and claim for an award by the said Ruth S. Lichty in the above-entitled compensation case be submitted to the court for hearing and determination upon the following statement of facts, which both parties agree to be true and correct, together with any additional evidence produced under the provisions hereof, to wit:

"(1) The employer company, the Lichty Construction Company, is a corporation organized and existing under and by virtue of the laws of the State of Wyoming.

The corporation was formed on the 16th day of May 1946. On March 20, 1950, the date of the accident in question, the stockholders of the company and the number of shares of stock owned by each were as follows:

| Name of Stockholder | Shares Owned |
|---|---|
| Glenn N. Lichty | 447 |
| Michael H. Lichty | 41 |
| John Lichty, Jr. | 41 |
| Ruth S. Lichty | 57 |
| Total number of shares outstanding | 586 |

"At that time Glenn N. Lichty, Ruth S. Lichty and Michael H. Lichty were the directors of the company and the officers were Glenn N. Lichty, president and superintendent of construction; Michael H. Lichty, vice-president; and Ruth S. Lichty, secretary-treasurer. Ruth S. Lichty was the wife of Glenn N. Lichty, and Michael H. Lichty and John Lichty, Jr., were brothers of Glenn N. Lichty. The two latter were at times employed by the Company and at such times were carried on the payroll and reported to the Compensation department as such.

"(2) The company was and is engaged in heavy construction work such as highway construction work. It owned and used miscellaneous heavy dirt-moving equipment ordinarily used in this type of work, such as tractors, bull dozers, scrapers, rollers, draglines and trucks. In the year 1949 the book value of its equipment was approximately $118,000. It was a pre-qualified contractor with the Wyoming State Highway Department up to the sum of $205,000, which means that it could bid on and contract for construction jobs up to that amount.

"Weather conditions to a large extent controll (control) the time that could be spent on jobs and the company maintained no labor force during the winter months in which it could not work. However, during the periods it could work it employed a rather large labor force, employing as many as twenty-five or more men for various purposes, including the operation of the machinery above described. All of such employment was and is an extra-hazardous occupation as defined and as covered by the Workmen's Compensation Law.

"At the time of the injury here in question the company was lining the Pilot Canal on the Riverton Project in

Fremont County with asphaltic membrane under the contract with the Bureau of Reclamation.

"(3) From the time of formation of this corporation to and including March 20, 1950, Glenn N. Lichty, the deceased, was at all such times in full and complete charge of the corporation.

"He performed all of the duties and functions ordinarily and usually performed by the president of a corporation such as the supervision and execution of various and sundry reports to governmental agencies; the negotiation and completion of contracts on behalf of the corporation; the signing of checks and other instruments necessary to the transaction of the corporate business. In addition to his duties as president he was also superintendent of construction. He had the right to hire and fire employees and to fix their pay; to examine, estimate and submit bids on proposed construction in which he was interested, and to bind and obligate the corporation to carry out contracts entered into for such construction; to purchase machinery, materials and supplies necessary to carry out contracts negotiated on behalf of the corporation; to supervise, control and direct all of the employees; the use of the construction equipment, and the methods and means of accomplishing completed jobs and related activities of the corporation.

*"At times the deceased did personally operate the heavy machinery and equipment and trucks of the company in order to keep the job moving.* No other officer or officers exercised any control over him as to the time he did put in on the job and he was free to come and go according to his own desires.

*"He received no compensation from the company as an officer or director but was carried on the payroll the same as any other employee of the company and was paid for actual time he was on the job as an employee of the company.*

*"During the following months the wage paid to the deceased was reported to the Workmen's Compensation Department upon the regular payroll report of the company and the proper fee paid thereon, to wit:*

"1946, August, September, October, November.

"1947, February, March, May, June, July, September, October, and November.

"1948, January through November.

"1949, July, August, September and October.

"1950, March.

"During the months of December 1948; January, March, April and May of 1949; and January and February of 1950, the company made no payroll return showing employment of any employees.

"(4) The accident occurred while Glenn N. Lichty was regularly employed by the company. He was driving a company pickup and had come to Riverton where he picked up a new fuel pump for another company truck and was returning with it to the job. About five miles west of Riverton on U.S. highway 287 he hit an icy spot on the highway; the pickup skidded and overturned, throwing Mr. Lichty out of the cab. The pickup rolled over him breaking his neck and crushing the left side of his chest. He died almost instantly as a result of the injuries which he received in this accident.

"(5) Glenn N. Lichty left a widow, to wit, the said Ruth S. Lichty, to whom he had been regularly married by a marriage duly solemnized by legal ceremony, but no children. Said widow filed her claim for compensation herein on April 5, 1950. The company does not contest her claim.

"(6) The Workmen's Compensation Department of the State of Wyoming has rejected said claim on the grounds that the deceased was not covered under the provisions of the Workmen's Compensation Law, since he was 'one holding an official position,' by reason of his being a director and president of the corporation, the Lichty Construction Company, at the time of his death. Notice of rejection was sent to Ruth S. Lichty by letter dated April 12, 1950, from the Clerk of the District Court of Fremont County, Wyoming.

"(7) Under date of April 18, 1950, Ruth S. Lichty filed written application with said Clerk of Court for hearing on said claim on the grounds that the deceased was at the time of his death an employee or workman engaged in extra-hazardous occupation for and on behalf of the Lichty Construction Company at the time of his death, and his death resulted from injuries received while so employed.

"(8) It is further admitted that as a matter of prece-

dent the Workmen's Compensation Department of the State of Wyoming has heretofore always rejected claims where the claimant was an officer of the corporation employer.

"(9) In addition to the death claim of Mrs. Lichty, E. E. Davis of Riverton, Wyoming, mortician, has filed a claim herein for $290 funeral expenses; and Dale Ashbaugh, M.D., has filed a doctor's claim for $5.00, both of which have also been rejected by the Workmen's Compensation Department of the State of Wyoming.

"(10) It is further stipulated and agreed that either party may produce such testimony and evidence before the court as may be desired to supplement the above stipulated facts."

This stipulation was signed by counsel for claimant, Ruth Lichty, and also by her and by the Attorney-General of the State of Wyoming. We have italicized some of the especially significant portions of this stipulation and which are especially important in view of the authorities presently to be cited.

After the presentation of this stipulation to the court, Mrs. Ruth Lichty was called as a witness on her behalf and testified in part that she was employed by the Company as a book-keeper and that the company was engaged in excavating and lining the Pilot Canal for the U.S. Reclamation Service out of Riverton, Wyoming; that this work involved digging out a foot or more of dirt in the bottom, sides of said canal, rolling and trucking with heavy equipment trucks, draglines; that the work started March 13, 1950; that her husband:

"* * * had been operating a tractor for the rolling, dragging, also he had used patrol for the work that week, and one Sunday we worked all day, and after we closed that work we had to go after another piece of equipment that we had on a small job that had been going on for just a few days for some land leveling for Mr. Stewart, a farmer there. That was Sunday evening. I went out with my husband, I drove the International tractor down to the lowboy that was backed to a place to be loaded, and he loaded it and we started out to pull the truck out to the main highway.

"The fuel pump wasn't working, we had to leave it set, anyway we couldn't move it on the place on Sunday, we were moving it back on the other job. He was also supervising the work that was going on. He had also to drive the gravel truck and he had also the pickup, or something."

That the company had about ten employees on the payroll besides Mr. Lichty and the witness. There was no cross-examination, both parties to the hearing rested thereby concluding the matter before the district court. After argument had, the case was submitted for decision resulting in the judgment above described.

Section 72-104 W.C.S. 1945 which enumerates extra-hazardous occupations mentions among many others "excavations" and "teaming and truck-driving." It will be observed that the district court in its judgment as above recited found that: "the deceased Glenn N. Lichty was killed while engaged in extra-hazardous employment on behalf of the Lichty Construction Company" basing its judgment solely on the additional finding that Lichty "was at the time holding an official position with said company as a director and president thereof." This conclusion as a matter of law the court evidently drew from section 72-106 W.C.S. 1945 subdivision ("i") which read at the time of the accident:

" 'Workman' means any person who has entered into the employment of or works under contract of service or apprenticeship with an employer, except a person whose employment is purely casual and not for the purpose of the employer's trade or business, or those engaged in a clerical work and not subject to the hazards of the business, or one holding an official position. The term 'workman' shall include 'employee' and the term 'employee' shall include 'workman' and each shall include the singular and plural of both sexes." (Italics supplied.)

In this connection also we quote subdivision ("h") of the same section reading:

" 'Employer' includes any municipality, county, person or body of persons, *corporate* or incorporate, and

the legal representatives of a deceased employer or the receiver or a trustee of a person, corporation, association or partnership." (Italics supplied.)

We have given this last subdivision verbatim also inasmuch as the Workmen's Compensation Department, by its correspondence above reviewed, seems to have taken the position that Lichty was an employer, though the stipulation filed in this case shows that he was employed by, and worked for, the Lichty Construction Company, a corporation, and was carried on the payroll of that corporation which was submitted to the Workmen's Compensation Department of the State of Wyoming the "same as any other employee of the Company and was paid for actual time he was on the job as an *employee of the Company*" (Italics supplied). The view of the Workmen's Compensation Department as expressed by the correspondence set out above seems to be contrary to the finding of the district court in connection with this matter. See also the authorities relative to this point cited infra.

Neither the district court nor the Workmen's Compensation Department of this State appear to have had in mind in the disposition of this cause the repeated utterances of this court directing that the language of the Workmen's Compensation Act should receive a liberal construction.

It may not be amiss to call to mind that in Baldwin et al v. Scullion 50 Wyo. 508, 529, 530; 62 P. (2d) 531, it was said:

"* * * the provisions of the Workmen's Compensation Act in this state should receive a liberal construction to accomplish the benevolent purpose for which they were promulgated (Sakamoto v. Kemmerer Coal Co., 36 Wyo. 325, 255 Pac. 356; McConnell v. Murphy Bros., et al., 45 Wyo. 289, 18 Pac. (2d) 629; Koprowski v. Megeath Coal Co., 48 Wyo. 334, 46 Pac. (2d) 61)."

In Christensen, State Treasurer, vs. Sikora 57 Wyo.

57, 75, 112 P. (2d) 557, the opinion filed therein was concluded with this language:

"We may not lay aside, however, the well-known principle which has heretofore been so frequently mentioned by this Court in disposing of Workmen's Compensation cases, viz.; that the Workmen's Compensation Law of Wyoming should be liberally construed so that where reasonably possible the industry and not the individual workman, should, to a large extent, bear the burdens of accidents suffered within it."

An able author well versed in the law of compensation cases has announced in his text "Injury and Death under Workmen's Compensation Laws," Horovitz, on page 209 that:

"Compensation provisions must be construed liberally to protect the injured worker, and hence exclusions are properly narrowly construed, to bring close cases within the protection of the acts."

It is declared in 71 C.J. 507 section 239 that:

"The majority of cases adhere to what may be called the dual capacity doctrine; that is, that an officer, director, or stockholder of a corporation will not be denied compensation merely because he is such officer, director, or stockholder, if, as a matter of fact, at the time of the injury he is engaged in performing manual labor or the ordinary duties of a workman and receives pay therefor in the capacity of an employee, or if he is engaged in an employment palpably separate and distinct from the official duties falling upon him as an officer of the corporation."

This view of the law is succinctly stated in the text above cited, Horovitz on Workmen's Compensation page 198 as follows:

"Most states now hold that if he is a *working official or stockholder*, and the carrier collects premiums on his wages, as distinguished from his profits, he is an employee of the corporation and may recover."

In Emery's case 271 Mass. 46, 48, 170 N.E. 839 the Supreme Judicial Court of Massachusetts has appropriately said:

"According to the statutory definition, the word 'employee' includes 'every person in the service of another under any contract of hire, express or implied, oral or written,' with exceptions not material here G.L.c.152 § 1 (4). Holding stock or office in a corporation is not necessarily inconsistent with being an 'employee' thereof. Dewey v. Dewey Fuel Co. 210 Mich. 370, Skouitchi v. Chic Cloak & Suit Co. 230 N. Y. 296. Hubbs v. Addison Electric Light & Power Co., 230 N. Y. 303. Compare Kolpien v. O'Donnell Lumber Co., 230 N. Y. 301. In the absence of special circumstances, a stockholder or officer of a corporation in its service is 'in the service of another' within the meaning of the statute, since the corporation is a legal entity distinct from any of its stockholders or officers. McAlevey v. Litch, 234 Mass. 440 441. Star Brewing Co. v. Flynn 237 Mass. 213, 217."

The New York Court of Appeals in the Matter of Skouitchi vs. Chic Cloak & Suit Co., 230 N. Y. 296, 299, 130 N.E. 299 has also pointed out:

"A corporation is a completely entity separate and distinguishable from its stockholders and officers and if it sees fit to have one of the latter serve it in the capacity of an ordinary employee we see nothing to prevent it from so doing. That seems to us to be the present case. The claimant was 'employed' as general manager. The term 'general manager' is somewhat ambiguous and of itself might indicate either an executive and important officer or a person performing ordinary duties of an employee. The evidence and findings in this case show that the position was of the latter class and that the claimant performed ordinary detail and manual work such as would be required of a typical employee. Under these circumstances we think that he was entitled to secure compensation as such for injuries under the general provisions of the Compensation Law."

Where it appeared in Hubbs vs. Addison Electric Light & Power Co., 230 N. Y. 303, 304, 305; 130 N.E. 302 that:

"In this case it has been found that the claimant owned a large proportion of the capital stock of a comparatively small electric light and power company and was its secretary and treasurer; that he was employed as a

general manager and as such 'performed manual labor at his employer's plant * * * and away from the plant;' that his weekly wage as such general manager was the sum of $25,"

the Court remarked that:

"* * * the claimant was 'employed' as general manager; that in such capacity he performed various manual services such as an ordinary employee might perform and that for his services in this particular capacity he received a weekly wage. * * * Under these circumstances we think that the award is sustained by the findings and that the order of the Appellate Division should be affirmed, with costs."

The Supreme Court of Ohio in Kuehnl vs. Industrial Commission of Ohio, 136 Ohio St. 313, 316, 317, 321, 324; 25 N.E. (2d) 682 appears to have indicated its approval of the dual status doctrine set out in 71 C.J. supra in language which is particularly appropriate to be kept in mind in the case at bar:

"Briefly stated, the commission claims that the claimant was an executive officer of the corporation and, therefore, not an employee entitled to participate in the State Insurance Fund. The commission denies that he may have both the status of an executive while engaged in executive duties, and the status of an employee while performing manual labor for the corporation during working hours devoted to its service. The claimant, on the other hand, claims that he is entitled to participate in the State Insurance Fund if injured while he is bona fide within the latter status, even though a major part of his time is devoted to executive duties for the corporation in whose success he is interested as a shareholder.

"This important question has not been previously decided by this court, although it has received consideration by the courts of a number of sister states. The importance of the question is recognized when it is considered that the individual business of hundreds and perhaps thousands of small corporations organized in this state is not sufficiently large to warrant the employment of full time executives, and that while of necessity the heads of such corporations are nominal executives

devoting a portion of their time to executive duties, they are also often engaged in performing manual labor necessary in the prosecution of the business.

"The Workmen's Compensation Act does not discriminate against small corporations and their employees, the latter being entitled to full protection under this law. The law was enacted, pursuant to the Constitution as stated in Section 35, Article II, 'For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment * * *'. In fact the spirit of the Workmen's Compensation Act is to give encouragement to the employment of the corporate fiction as a nominal employer, so that all bona fide employees of such an entity, when they exceed two in number, are granted coverage. The social implications of the law are that the economic loss of the injured employee, or of his dependents in case of his death, must be borne by industry . . . * * *"

The Lichty Construction Company, the employer of Glenn N. Lichty was obviously a small business corporation and Mr. Lichty, in order to make a success of the work it contracted to do, found it necessary to look after many phases of its executive work as well as to do the things that in a large corporation would undoubtedly be left to employees who would be quite unable to perform executive functions. No reason is perceived why Lichty should not do what he did under the circumstances in which he found himself. If he was injured while doing a mere workman's task should he have sacrificed his right to protection under the Act? Especially when he was not paid for his work as an executive in the Lichty Construction Company, but relied simply on the protection afforded an employee carried on the corporation's payroll and upon which the State Workmen's Compensation Department collected fees. Closing this opinion in the Kuehnl case supra the Ohio Court further said:

"This court has held on several occasions that the Workmen's Compensation Act of this state is for the benefit of the injured party and should be liberally interpreted

in favor of the applicant. Industrial Commission v. Pora 100 Ohio St., 218, 125 N.E. 662; Industrial Commission v. Weigandt 102 Ohio St., 1, 7; 130 N.E. 38; Industrial Commission v. Lewis 125 Ohio St., 296, 181 N.E. 136. This is especially so in the case at bar since the claimant's wages were included in the payroll report and were taken into consideration in the premium paid by the corporation. If such course is consistently followed, the State Insurance Fund will not suffer by reason of the allowance of such a claim."

It is quite unnecessary to cite decisions that in construing statutes the intention of the law making body which enacted them is to be ascertained as nearly as possible. With that principle as a guide, let us now turn to the legislative history of what has occurred, which may be of aid, in the interpretation of the statute in question (subdivision ("i") of 72-106 supra). In 50 Am. Jur. 328-9, section 337 it is said:

"The interpretation of a statute by the legislative department may go far to remove doubt as to its meaning. This fact is recognized by the courts which regard it as proper, in determining the meaning of a statute, to take into consideration subsequent action of the legislature, or the interpretation which the legislature subsequently places upon the statute. There are no principles of construction which prevent the utilization by the courts of subsequent enactments or amendments as an aid in arriving at the correct meaning of a prior statute, and it is very common for a court, in construing a statute to refer to subsequent legislation as impliedly confirming the view which the court has decided to adopt."

After the ruling of the Workmen's Compensation Department of this State had been promulgated, at the very next session of our State Legislature the exception provision of subdivision ("i")—"or one holding official position" was struck from the law by section 3 subdivision ("b") of Chapter 143 Laws of Wyoming 1951 page 277 and the section was phrased to read as follows:

" 'Workman' means any person who has entered into the employment of or works under contract of service or apprenticeship with an employer, except a person whose

employment is purely casual and not for the purpose of the employers' trade or business, or those engaged in clerical work and not subject to the hazards of the business. *The term 'workman' shall further include the officers of a corporation, the business of which is classed as extra-hazardous in nature, provided such person or persons are actually subject to the hazards of such business in the regular performance of his or their duties* and provided further that the coverage of such person or persons shall be contingent upon notice of such intent being filed with the Workmen's Compensation Department by registered mail at least thirty (30) days prior to the taking effect of such coverage and the payroll reporting of such person or persons' salary or wage shall be at least Twenty-four Hundred $2400.00) Dollars annually but need not exceed Forty-eight Hundred ($4800.00) Dollars of such person or persons' annual salary or wage, and after the filing of such notice such person or persons must be included on all payrolls filed thereafter until coverage is withdrawn by written notice delivered to the Workmen's Compensation Department. The term 'workman' shall include 'employee' and the term 'employee' shall include 'workman' and each shall include the singular and plural of both sexes. Any reference to a workman who has been injured shall, where the workman is dead, include a reference to his 'dependent family' as hereinafter defined, or to his legal representatives, or where the workman is a minor or incompetent to his guardian or next friend; and no minor workman shall be denied the benefits of this Act for the sole reason that his employment is in violation of the labor laws governing the employment of minors." (Italics supplied.)

It would seem that the Legislature was endeavoring to carry out and approve the liberal construction theory which most Appellate Courts (including this court) adopt touching Workmen's Compensation Acts and considered the ruling of the Workmen's Compensation Department of the State now in question before us, altogether too severe and illiberal especially as regards small business concerns whose officers are perforce obliged to take a hand in the manual performance of the works they undertake and the later law was enacted

with that intention in mind. At any rate the law in question was radically altered as very clearly appears from a comparison of the two subdivisions mentioned above.

We now call attention to the case of Millers' Mutual Casualty Co., v. Hoover et al (Tex. Comm. of App.) 235 S.W. 863, 864, 865 and 866. In that case it appeared that the G. B. Smith Milling Company was a private corporation operating a flour mill. It had a board of directors of which Guy Frank Hoover was one. Its president and General Manager was one G. B. R. Smith. Hoover in addition to being a director was its superintendent and head miller. Briefly, his duties in that capacity were to direct the operation of the plant machinery, the manufacture of flour, overlook and direct repairs and at times do the actual work in connection with these matters. Ordinarily, he was without authority to employ and discharge servants though at times he did both to a limited extent. The president, G. B. R. Smith usually directed the mill and hired and fired its employees and exercised a general supervision over the operation of the mill. Hoover was given a fixed monthly salary. Whether that was due to him as a director of the corporation the evidence failed to disclose. Hoover was accidentally killed at the mill while engaged in the performance of his duties as superintendent and head miller. His widow, Mrs. Louise E. Hoover, presented a claim for compensation under the Workmen's Compensation Act of the State of Texas. This claim was opposed by the milling company, and the Millers' Mutual Casualty Co. insurer.

The Industrial Accident Board of Texas allowed this claim when duly presented to it. On review the trial court and the Texas Court of Civil Appeals also upheld the claim, 216 S.W. 475. Their view thereafter was also sustained by the Texas Commission of Appeals in a very comprehensive examination of the law and the facts involved in the case. (235 S.W. 863) supra.

The Texas Law of 1917 defined an employee thus:

" 'Employé' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written, except masters of or seamen on vessels engaged in interstate or foreign commerce, and except one whose employment is not in the usual course of the trade, business, profession or occupation of his employer. Part 4, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246-82.)"

Section 1a of Part 4 (Article 5246-83) the section which called for construction read:

" 'The president, vice-president or vice-presidents, secretary or other officers thereof provided in its charter or by-laws and the directors of any corporation which is a subscriber to this act shall not be deemed or held to be an employé within the meaning of that term as defined in the preceding section hereof.' "

The sole question presented to the several courts was whether an employee of a corporation was precluded from the benefits of the Workmen's Compensation Act by reason of the fact that he was also a director of the employing corporation. The appealing insurer and the milling company contended that the proper construction of section 1a supra should be:

"* * * that an officer or director of a corporation is precluded from the benefits of the act, regardless of whether, aside from his official duties, he be also a bona fide employé of the corporation within the meaning of the act; * * *"

The claimant, however, insisted that:

"* * * only the officers named as such are excluded from the benefits of the act; and, where they occupy the dual position of officers and employés within the meaning of the act, they are entitled to its benefits if injured while engaged in the performance of their duties as employés."

In the course of its opinion the Commission of Appeals used in part the following reasoning:

"We are not prepared to say that the language of section 1a is so plain and free from doubt as not to call for

construction and invite inquiry into the legislative intent. It has been held in a number of states that there is nothing in the relation of an executive officer or director of a corporation which is irreconcilably inconsistent with his being also an ordinary employé of the corporation within the provisions of Workmen's Compensation Acts. The cases upon this subject are collated in 1 Honnold on Workmen's Compensation, 173, and 28 R.C.L. 764 and 765. Stockholders of a corporation are, in a sense, the owners of the corporation. Its directors have the sole management of its affairs, and their acts as such are its acts. The same may be said of its officers while acting within the powers delegated to them by the board of directors. But, as individuals, the stockholders, directors, and officers of a corporation are distinct legal entities, and are as entirely free to deal with the corporation by contract or otherwise, within certain well-defined limitations not essential to enumerate, as any other individual.

"It is readily conceivable that one might occupy the dual relation of an ordinary employé coming within the benefits of the act, and of an employé coming within one of the excepted employments enumerated in the act. As, for example, a person operating a small manufacturing plant might have one in his employ in the plant who also performed services for him as a domestic servant. Under such circumstances, we think it would be held that the fact that he performed duties which were not within the protection of the act would not preclude him from receiving the benefits of the act if injured while performing the duties of an employé within the protection of the act. Why should not the same course of reasoning apply to one who is both officer and employé of a corporation? The only necessary construction to be placed upon section 1a is that officers and directors as such are precluded from the benefits of the act. Beyond that the express language is silent. To give it either of the constructions contended for would require supplementing the language used, if all uncertainty is to be removed. Plaintiff in error would supply after 'directors of any corporation' the words 'whether acting in their official capacity, or otherwise'; while defendants in error would supply at the same place the words 'as such.' It seems quite plain to us that in order to arrive at the

legislative intent we must look beyond the mere language of section 1a."

Explaining the idea underlying the exclusive terminology of section 1a supra the Commission said:

"The underlying reason for excluding the officers and directors or a corporation as such from the provisions of the act is apparent. The officers and directors of a corporation do not come within the ordinarily accepted meaning of the terms 'workmen' and 'employés', for whose benefit the legislation is primarily enacted. Their duties toward the corporation and its business are those of managing and directing heads, and they do not, as a rule, perform the ordinary tasks, nor are they subjected to the ordinary risks, of employés or workmen engaged in the service of the corporation. Nor, as a general rule, is their compensation affected by their temporary disability caused by injury while engaged in their employment. On the other hand, where, although occupying an official position with the corporation, they are employed as workmen or employés in the ordinary sense of those terms, and come clearly within the provisions of the act, there would appear to be no substantial reason for excluding them from those benefits merely because they also hold official positions with the corporation; and the Legislature should not be presumed to have intended so to exclude them unless the language employed be clearly not susceptible of any other construction."

Concluding this opinion the Commission further said: "It is clear, and in fact conceded, that Hoover was head miller of the corporation; that his employment was bona fide; that he lost his life in the discharge of his duties as head miller; that in such employment he was not acting as officer or director of the corporation; and that he clearly came within the provisions of the act, unless precluded by section 1a.

"We conclude that the judgments of the district court and Court of Civil Appeals should be affirmed."

The Chief Justice of the Supreme Court of Texas thereupon announced:

"The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court."

The foregoing decision was followed in the case of Cook vs. Millers' Indemnity Underwriters, 240 S.W. 535 which was also decided by the Commission of Appeals. In that case Cook, the claimant, was a stockholder in the gin company, his employer; he was also director, secretary and treasurer of the corporation. The Industrial Accident Board of the State of Texas allowed his claims as did the district trial court. The Court of Civil Appeals reversed the trial court. The Commission of Appeals recommended to the Supreme Court that "the judgment of the Court of Civil Appeals be reversed and that of the trial court affirmed." This recommendation the Supreme Court of Texas also adopted.

Subsequently, the Texas Legislature amended section 1a supra by adding the words " '* * * and this notwithstanding they may hold other offices in the corporation and may perform other duties and render other services for which they receive a salary'." (Bell vs. Texas Employers' Ins. Ass'n. 43 S.W. 2nd 290.)

It will be observed that the Texas Legislature did substantially the reverse of what was done by the Wyoming Legislature in Section 3 of Chapter 143 Laws of Wyoming 1951 quoted supra. After the change in the Texas Law the case of Bell vs. Texas Employers' Ins. Ass'n., 43 S.W. 2nd 290, 292 and 293, came before the Texas Court of Civil Appeals. Therein the earlier decisions cited above, to-wit: The Hoover and Cook cases, were reviewed and then the court remarked:

*"These decisions appear to be in harmony with the spirit of the Workmen's Compensation Law."* (Italics supplied.)

Relative to the amended section 1a the Court reversing and remanding the judgment below allowing an award to the secretary and director of a corporation for a claim as an employee of that company said:

"However, because of such construction of section 1a, as it then existed, the Legislature adopted the 1923

amendment of this section as expressive of its intent on this question. While section 1a, as it now exists, *may be out of harmony with what generally has been considered the spirit of the Workmen's Compensation Law,* yet its language is such that there can be no doubt as to its meaning, especially when the legislative history of this enactment is borne in mind, as well as the court's construction of the 1917 enactment. It was such construction that the Legislature undertook to prevent in the future." (Italics supplied.)

We feel that it is our duty to decide the case at bar in accord with our previous decisions liberally construing the Workmen's Compensation Law of this State and in accord with its intent as indicated by the action of the 1951 Legislature described above. It may be in the instant action noted that the Workmen's Compensation Department of Wyoming accepted the pay rolls of the Lichty Construction Company and also the fees paid said department by that company on account thereof and acquiesced in the reception thereof without objecting that Lichty was an officer of the Company and "held an official position" therein but, nevertheless, he was carried on the company's payroll over a period of a number of years and his wages, of course, listed on the pay roll as an employee. He never received a cent as an executive of the company; whether the company paid any dividends does not appear in the case. It may well be that payroll wages was all that the operation of the company could produce.

It is suggested that the Workmen's Compensation Department has heretofore always rejected claims "where the claimant was an officer of the corporation employer." This without more we think, was an erroneous view of the language of the Act and not in accord with the spirit of its being liberally construed or in accord with the manifest policy of the Act as declared by this court to impose upon the industry the burden of claims on account of injuries suffered by workmen under it.

In Christensen vs. Sikora, supra, this was said:

"It is suggested that the State Treasurer, the executive officer charged with the duty of administering the Workmen's Compensation Law, has always regarded grocery stores as without the purview of that law and the principle is invoked that the contemporaneous construction placed thereon by an official or department whose duty it is to administer a law should prevail. But that rule is 'restricted to cases in which the meaning of the statute is really doubtful, and the courts are not bound to follow, or justified in following, an executive construction which is clearly erroneous.' (59 C.J. 1030-1031, and cases cited.)"

Much more could be said in support of the result in the case at bar which we feel constrained to announce. Sufficient, however, has been said to indicate our views anent the instant matter. As the law has been altered to comply with what we deem the true spirit of the Act relative to a case such as we now have before us it seems that a case of this character would hereafter be very unlikely to again arise.

The judgment of the district court of Fremont County will therefore be reversed and the case remanded with instructions to make the proper award to Mrs. Ruth S. Lichty, the claimant, as is directed by the Workmen's Compensation Act.

*Reversed and Remanded.*

BLUME, C. J. and ILSLEY, J., concur.