The COUNTY OF NATRONA and Natrona
County International Airport Board,
Appellants (Plaintiffs below),

v.

CASPER AIR SERVICE, a Wyoming Corpo-
ration, Appellee (Defendant below).

No. 4453.

Supreme Court of Wyoming.

May 27, 1975.

Robert Jerry Hand and Dennis M. Hand, of Hand, Hand & Hand, P. C., Casper, for appellants.

Michael J. Sullivan, of Brown, Drew, Apostolos, Barton & Massey, Casper, for appellee.

GUTHRIE, Chief Justice.

Appellants herein, the County of Natrona and Natrona County International Airport Board, plaintiffs below, appeal from the entry of a summary judgment against them by the district court in a suit against Casper Air Service, appellee, defendant below.

Plaintiff Natrona County International Airport Board is an agency established by and under the Board of County Commissioners of Natrona County, Wyoming. Plaintiffs filed their complaint, claiming the sum of $122,401.70, which was thereafter amended to claim the amount of $161,441.56. This claim was based upon the payment by way of a monthly refund to defendant for a period beginning in 1953 of two cents per gallon on all gasoline purchased by it in excess of 10,000 gallons monthly by virtue of the provisions of § 39–200, W.S.1957, 1973 Cum.Supp. The plaintiffs complain that these payments were wrongfully and unlawfully made, that defendant was not entitled to receive these sums, and that they should be returned to them as public funds. In response thereto defendant admitted that it had received these sums upon claim based upon invoices which it had submitted to the Natrona County Airport Board and that board had determined that it and all other fixed base operators were entitled to reimbursement of a portion of the taxes paid in the sum of two cents per gallon for each gallon over 10,000 purchased by the defendant monthly. By way of counterclaim defendant sought a declaratory judgment, finding that the defendant as such fixed base operator had properly received these funds and that "pursuant to Section 39–200, Wyoming Statutes 1957 the County [a plaintiff] is

obligated to 'refund to the purchaser or use [user] of gasoline for use in aircraft at any airport in this state upon which the state gasoline tax of four cents (4¢) per gallon has been paid, two cents (2¢) per gallon on the purchase in excess of ten thousand (10,000) gallons per month,' " and that as a purchaser of this gasoline for use at the Natrona County Airport it was entitled to such reimbursement.

In its disposal thereof the district court entered judgment upon the motion for summary judgment as follows:

"1. That plaintiffs take nothing by their complaint herein.

"2. That defendant Casper Air Service is a 'purchaser' of gasoline for use in aircraft at a municipal or county airport within the meaning and intent of the provisions of Section 39–200, Wyoming Statutes, 1957, and as such is entitled to tax rebate payments authorized by the provisions of such statutory section.

"3. That defendant is granted judgment against plaintiffs as requested in Count I of its Complaint for all rebates accrued but unpaid through the date of this Judgment."

The above were based upon findings which sustained this judgment.

Appellants state the question rather brusquely as follows:

"Whether a commercial dealer in aviation fuel is entitled to a tax refund on gasoline purchased for resale at an airport in Wyoming by virtue of § 39–200 Wyoming Statutes, 1957?"

■ It may be suggested that for purposes of our disposal this question is more properly stated, Should § 39–200, W.S.1957, 1973 Cum.Supp., be construed to allow a fixed base operator who purchases commercial aviation gasoline for itself and for resale to others and pays the original tax this tax refund of two cents per gallon on all gasoline in excess of 10,000 gallons purchased by it in a given month?

The statute involved, so far as it is directly material to the controversy, is as follows:

"All sums of money received and collected under provisions of this act shall be made payable to the board of equalization of the State of Wyoming * * *. From all funds received from gasoline used for airplanes at any municipal or county airfield, the state treasurer shall first deduct the pro rata share of the cost of collecting such gasoline tax and credit said share to the state board of equalization, the remaining funds received from such gasoline tax shall be paid the city, town or county where such airfield is located, to be used for the maintenance of such airfield. All funds so paid to the city, town or county shall not be considered to accrue to the state and the board in collection of such moneys and the state treasurer in the payment over thereof shall be construed to be the agents of each such city, town or county, *and any such* city, town or *county shall refund to the purchaser or use [user] of gasoline for use in aircraft at any airport in this state upon which the state gasoline tax of four cents (4¢) per gallon has been paid, two cents (2¢) per gallon on the purchase in excess of ten thousand (10,000) gallons per month.* Provided further, that the state treasurer shall refund to the purchaser and user of gasoline used for agricultural purposes, and purchased from any Wyoming wholesaler or dealer, the tax of four cents (4¢) as provided in section 39–200 Wyoming Statutes 1957, and the tax of one cent (1¢) as provided in section 39–202 Wyoming Statutes 1957, * * *." (Emphasis supplied)

The basis of appellants' contention is that appellee herein is not a "user or purchaser" as described in this statute, and appellants aim their argument at the proposition that this refund is directed at and receivable only by the ultimate user of this gasoline who consumes it in an aircraft.

In the words of the appellants, "had it been the legislative intent to refund tax to a dealer of gasoline, the phrase could have been 'shall refund to purchasers or users of gasoline for aircraft' completely omitting the key phrase 'use in.' "

The further suggestion is made that a better way of phrasing this if the legislature had such intention would have been to use the word "dealer" instead of the words "purchaser or user." It is, of course, beyond our power or the powers of counsel to tell the legislature what words they should have used. Appellants set out in their brief that the phrase "can be read with more than one meaning" and further state, "Obviously, no clear expression of legislative intent can be found in the applicable statutory language," which demonstrates an agreed ambiguity. This seems further demonstrated by the ruling of the trial court and the administrative or contemporary construction made upon this statute during the term of many years. Although appellee insists that this statute is not ambiguous in its argument, for purposes of our disposal we shall treat the statute as uncertain and susceptible to more than one meaning, so it must be considered ambiguous, Ballentine's Law Dictionary, p. 73 (1948 Ed.). The court then is confronted with the task, in its construction, of determining the legislative intent as nearly as possible, Lichty v. Lichty Const. Co., 69 Wyo. 411, 243 P.2d 151, 159; School Districts Nos. 2, 3, 6, 9, and 10, in County of Campbell v. Cook, Wyo., 424 P. 2d 751, 756.

In order that we may make a determination of the legislative intent, the nature and character of this tax must be considered. This is a license tax as defined in our statute:

"A license tax of four cents per gallon is hereby levied on all gasoline used, sold or distributed for sale or use within this state to be collected as hereinafter set forth." (Section 39–184, W.S.1957, 1973 Cum.Supp.)

Thus it is in no manner a sales or use tax on retail sales. The case of Edelman v. Boeing Air Transport, Inc., 289 U.S. 249, 251, 53 S.Ct. 591, 592, 77 L.Ed. 1155, gives recognition to the fact that as administratively applied the tax was:

" * * * not levied upon the consumption of gasoline in furnishing motive power for respondent's interstate planes. The tax is applied to the stored gasoline as it is withdrawn from the storage tanks at the airport and placed in the planes. * * *"

This view was adopted and approved in Texas Co. v. Siefried, 60 Wyo. 142, 147 P. 2d 837, 842–843, rehearing denied 150 P.2d 99. The Edelman case was decided in 1933 and we must infer that the legislature had knowledge of this interpretation, Civic Ass'n of Wyoming v. Railway Motor Fuels, 57 Wyo. 213, 116 P.2d 236, 245; Board of County Commissioners of County of Albany v. White, 79 Wyo. 420, 335 P.2d 433, 437; and when this original provision for refund was enacted in 1935, relying upon the same words, "purchaser or user," had their intention been to modify these terms to include the concept of ultimate use they could have done so by proper words.

■ This court reiterated and expanded this definition in Texas Co. v. Siefried, supra, 147 P.2d at 842, discussing the comprehensive nature of the word "use" and said:

" ' * * * Possibly the word may have the meaning of "consume", but such is not its usual significance. See In re Moor's Estate, 163 Mich. 353, 128 N.W. 198. As we view the sense of the word in its relation to the language of statutes, we think it was not meant that the incidence of the tax should be restricted to gasoline actually consumed in the operation of motor vehicles on the public highways of the State.' " (Quoting from State v. Crane Hook Oil Storage Co., 2 Terry, Del., 194, 201, 18 A.2d 427, 429.)

This case further held that the tax was not levied upon the use but may be levied upon its withdrawal from storage, and phrased it in this manner, 147 P.2d at 844:

"It is also said for the plaintiff that the peculiar wording of the Alabama Statute, viz., 'withdrawing from storage' distinguishes the Pan American case [Pan American Petroleum Corp. v. State of Alabama, 5 Cir., 67 F.2d 590] from that at bar. But we think, on principle, both the Boeing case and the Pan American case are applicable to the facts presented here. Both storage in the tanks of the plaintiff's bulk plant at Cody and the withdrawal thereof into the tank trucks of the Consignee in charge of that plant at Cody, for delivery to the contractors in the park, were certainly 'the exercise of any right or power over tangible personal property' which is what the word 'use' is defined to be as we have seen. The fact that the Alabama law in the Pan American case directs the incidence of the tax upon 'withdrawing from storage' was merely applying the tax to a particular kind of 'use' of the motor fuel."

The effect of appellants' position is that the court should substitute the phrase "to the ultimate user of the gasoline" or some such similar phrase for the words "the purchaser or user of gasoline." We have heretofore said that courts cannot supply words, the statute being intelligible without these words, Lo Sasso v. Braun, Wyo., 386 P.2d 630, 631; In re Adoption of Narragon, Wyo., 530 P.2d 413, 414. We find the Edelman and Texas Co. cases most persuasive.

Without any discussion of the finer points of grammar argued, and in light of the conceded ambiguity, it may be suggested that in determining the intention of the legislature they may have little value, particularly in light of the above decisions and of the administrative interpretation placed thereon as later mentioned. To now assert without a clear statement of such intent by the legislature that the basis of the collection of this tax is of one character when applied to the taxpayer and of another when it is applied to a claimant for refund

seems basically unfair. It is significant that this same section, by way of an amendment made in 1957 (Ch. 23, § 1, S.L. of Wyoming 1957), provides for the refund to the purchaser and user of gasoline for agricultural purposes and provides a full procedure for reclaiming the same "for use in the operation of a ranch or farm," i. e., the ultimate user. It may be suggested that in this amendment, by virtue of this rather detailed provision, the legislative body itself recognized this distinction, particularly when it defined the basis of the refunds. Nor can we find that in reliance upon the test of "plain, ordinary, and usual meaning of words," State v. Stern, Wyo., 526 P.2d 344, 346, the trial court's finding was inconsistent with such interpretation because admittedly the gasoline, subject of this refund, is used in aircraft although not in the aircraft of the appellee.

■ Appellants place considerable reliance upon the rule that a tax exemption must be strictly construed against one who asserts it and rely upon State ex rel. Goshen Irr. Dist. v. Hunt, 49 Wyo. 497, 57 P.2d 793. However, this rule and the reasons for it are discussed in the case of State v. Capital Coal Co., 54 Wyo. 176, 88 P.2d 481, 483, which case explained that the reason for this rule was to prevent an inequality of tax contributions to a common burden and cited from 2 Cooley on Taxation, § 673, p. 1414 (4th Ed.). State v. Capital Coal Co., supra, determined that this rule was inapplicable in construing an exemption under the Sales Tax Act. We do not find that this exemption creates an inequality of tax contribution.

Appellants make further reference to § 39–310(b), W.S.1957, and the definition of "use" appearing therein,[1] urging that this would preclude payment of a rebate to a dealer. For several reasons this is of little help. It is to be noted that this section by its specific terms applies to the Use Tax Act of 1937 (§§ 39–309 to 39–335, W.S. 1957, 1973 Cum.Supp.). The use tax was intended as a complement to the sales tax, Continental Supply Co. v. People, 54 Wyo. 185, 88 P.2d 488, 490, 129 A.L.R. 217, and the legislature did not intend to pile up sales taxes, State v. Capital Coal Co., supra, 88 P.2d at 484. It is apparent, without detailed discussion, that this definition was necessary to avoid possible conflict with other provisions of the Act, particularly § 39–312(a), W.S.1957.

■ It has been suggested that when words have the possibility of different meanings, definitions from one legislative Act have little value in determining their meaning in another, County of Lake v. Gateway Houses Foundation, Inc., 19 Ill. App.3d 318, 311 N.E.2d 371, 377. The effect of express limitation of the Act to certain sections is mentioned in McCoy v. People, 165 Colo. 407, 439 P.2d 347, 350, and Waldron v. Leevale Collieries, 127 W. Va. 443, 33 S.E.2d 227, 229.

Although this interpretation by the trial court might be rested upon what has been before stated, we find other aids in this matter, one being the long continued administrative or contemporary interpretation which has prevailed since at least 1953. The record here shows without dispute that the appellants have since 1954 followed the procedure of payment to appellee of the refund of two cents per gallon less cost of the collection of all gasoline sold in excess of 10,000 gallons monthly, and that this procedure was followed until the time this controversy arose. The same procedure has been followed at the Cheyenne airport since at least 1953 and was based upon an opinion of the City Attorney of Cheyenne, as well as the apparent interpretation of the Wyoming State Highway Department, which earlier handled this tax collection process. At Casper it has been handled in this manner since 1954 based upon the opinion of the Natrona County Attorney's office and the interpretation of the State Highway Department above men-

1. See new definition as included in 1973 Cum.Supp.

tioned. Additionally, the report forms supplied by the State Highway Department and later by the Department of Taxation and Revenue, which was responsible for the collection of the tax during this period, refer to this section and require reports from the wholesaler of the sale to the purchaser (appellee in this case) and in turn require a report from appellee on such gross purchase without any requirement of listing the individual purchasers or requirement that it be shown the purchaser used the gasoline in an airplane. It is upon the basis of these reports that the refund was made by the State to appellants herein.

Appellants contend that because this is a summary judgment proceeding it was improper for the trial court to consider this because there is a conflict of evidence as to this being a universally applied administrative procedure or interpretation. We hazard no statement as to the necessity of the trial court's considering this in its determination or the propriety of at least considering this showing insofar as it might bear upon the question of legislative history. We will examine, however, the affidavit of Robert F. LaLonde, Manager of the Jackson Hole Airport, upon which this claim of conflict of evidence is based. Portions of that affidavit are categorical assertions and conclusions which we cannot properly consider. See Wells v. Jeep Corporation, Wyo., 532 P.2d 595, 597. An examination of the material parts of this affidavit, or the ones proper for consideration, reveals the following:

> " * * * that no rebate has ever been made to a fixed base operator selling aviation fuel at the Jackson Hole Airport when sales of the operator have been over 10,000 gallons per month; * * * "

This affidavit does not, in our view, create any conflict of material fact. It makes no attempt to demonstrate that this interpretation has not been followed in Cheyenne and Casper, nor is there any denial of the

fact that appears in the affidavit of Everett C. Fuller, who was during the years 1953 and 1954 a county commissioner for Natrona County and was on the airport board as their representative at the time this question arose, that the rebate was instituted in Casper upon the advice of the county attorney and the Wyoming Highway Department interpretation, the agency which at that time had responsibility for administration of the statute. For a party who is so conscious of the niceties and subtleties of statutory language to rely upon such affidavit for this proposition seems rather out of place. It is to be noted that although it relates that no such rebate has ever been made, there is no definite statement that any operator has ever sold an amount over 10,000 gallons at that airport. There is no showing that if this was done any such claim requiring such administrative interpretation was ever presented. A party cannot, in reliance upon such a showing, create a conflict as there is an affirmative burden on the party seeking to defeat such a motion, Kover v. Hufsmith, Wyo., 496 P.2d 908, 910. The trial court could then find from undisputed evidence that this was the administrative or contemporary interpretation. This court has long recognized that although it is not decisive, it is proper to give weight to such interpretation, Kearney Lake, Land & Reservoir Company v. Lake DeSmet Reservoir Company, Wyo., 487 P.2d 324, 327; School Districts Nos. 2, 3, 6, 9, and 10, in County of Campbell v. Cook, Wyo., 424 P.2d 751, 758, and cases therein cited.

Additionally, in this case we find some help as to the intention of the legislature resting in the legislative history. This is sketchy at best, and both court and counsel are handicapped by the lack of proper records of our legislative proceedings.[2] They do, however, reflect that in 1953 a bill was introduced in the house of representatives by a member of the Laramie County delegation who had a connection with the air-

2. See reference to the lack of records mentioned in the dissenting opinion in In re Adoption of Narragon, Wyo., 530 P.2d 413, 415.

port and was at that time familiar with the interpretation being relied upon, and this bill was specifically directed at removing the doubt or changing the law and would have provided that the rebate be payable to "ultimate users who consume 5,000 gallons per month." (House Bill 162, 1953.) This bill was approved by the house but was not passed by the senate, from which it may be inferred that the legislature did not wish to change such interpretation because this by its terms directly provided for what appellants now contend.

Appellants urge that to interpret this statute as the lower court did will accomplish and give rise to an absurd result, which is improper in construing a statute, and rely upon Texas Co. v. Siefried, supra, 147 P.2d at 847, for this proposition. We view this argument as illustrative of an amazing imagination and considerable ingenuity, but in absence of even a whisper in the record that this interpretation has lent itself to such absurdity during the some twenty years it has been effective we believe further pursuit of that argument would not be productive.

■ We have generally recognized that the legislature may have been considered to have acquiesced in an administrative interpretation by its failure to amend the law, particularly if the legislature has had knowledge of its construction. Although this has been applied in most cases to opinions of the attorney general, State ex rel. Peterson v. Ellsworth, 59 Wyo. 288, 139 P.2d 744, 748, in the case of In re Roby, 54 Wyo. 439, 93 P.2d 940, 947, acquiescence was implied in a matter involving printed regulations of the Workmen's Compensation Department; and in Farmers Automobile Inter-Insurance Exchange v. MacDonald, 59 Wyo. 352, 140 P.2d 905, 916–917, the court said the failure of the legislature to pass a bill which would have changed a known attitude of the insurance commissioner, while not controlling, should be considered. The record demonstrates that this interpretation was placed before the legislature in 1953 and was possessed by the sponsor of the bill. The affidavit of Lou Domenico, president of Sky Harbor Air Service in Cheyenne, the fixed base operator at the Cheyenne Municipal Airport since 1953, asserting that he with other persons actively sought the defeat of the bill and asserting the propriety of the interpretation that was then being followed which resulted in this payment to the fixed base operator, demonstrates that this knowledge was before the legislature. Additionally, in Edelman, supra, 289 U.S. at 251, 53 S.Ct. 591, the United States Supreme Court commented on the administrative construction and application of the word "use" in connection with gasoline tax and that it was not levied upon consumption. There is, therefore, a strong reason for implying legislative acquiescence.

The question raised in the briefs in connection with the lower court's finding that these payments could not be recovered because appellants were estopped from asserting such claims is unnecessary of disposal because of our views herein.

From the foregoing it is our opinion that the trial court was correct and that the judgment should be affirmed.

Affirmed.