CLYDE H. SIMPSON, as Tax Collector of Duval County, Florida, and J. M. LEE, as Comptroller of the State of Florida, v. SCOTT M. LOFTIN and JOHN W. MARTIN, as Trustees of the property of Florida East Coast Railway Company.

33 So. (2nd) 230                                        June Term, 1947
January 9, 1948                                          Division A

*J. Tom Watson,* Attorney General, *T. Paine Kelly,* Assistant Attorney General, *J. Henry Blount,* County Attorney, for appellants.

*Russell L. Frink* and *Samuel Kessewitz,* for appellees.

TERRELL, J.:

Appellees as complainants filed their amended bill of complaint in the Circuit Court of Duval County to restrain appellants, as defendants, from collecting taxes levied and assessed by them against certain tangible and intangible personal property held by complainants on the first day of January, 1942 in their capacity as Trustees for the East Coast Railway Company. Epitomizing from the amended bill of complaint, the chancellor in his final decree catalogued said assessments as follows:

"(1) 1942 Intangible Property tax:

|  | Value | Amount of Tax |
|---|---|---|
| Class A | $ 2,311,110.00 | $ 115.55 |
| Class B | 769,150.00 | 769.15 |
| Class D | 557,030.00 | 557.03 |
| Total |  | $1,441.03 |

"(2) 1942 Tangible Personal Property Tax:

| 10% Penalty (Failure to Value the Return) | Amount of Tax |
|---|---|
| $2,400.00 | $36.01 |
|  | 3.60 |
| Total | $39.61 |

and for the years 1943, 1944 and 1945 as follows:

"(3) 1943 Intangible Property Tax:

|  | Value | Amount of Tax |
|---|---|---|
| Class A | $ 7,305,660.00 | $ 365.28 |
| Class B | 766.220.00 | 766.22 |
| Class D | 941,870.00 | 941.87 |
| Total | | $2.074.37 |

"(4) 1944 Intangible Property Tax:

|  | Value | Amount of Tax |
|---|---|---|
| Class A | $18,330,140.00 | $ 916.50 |
| Class B | 766,330.00 | 766.33 |
| Class D | 1,061.920.00 | 1,016.92 |
| Total | | $2,699.75 |

"(5) 1945 Intangible Property Tax:

|  | Value | Amount of Tax |
|---|---|---|
| Class A | $24,121,520.00 | $1,206.08 |
| Class B | 759,270.00 | 759.27 |
| Class D | 1,252,950.00 | 1,252.95 |
| Total | | $3,218.30" |

Motions to dismiss the amended bill were overruled and separate answers were filed by each defendant in which all material allegations were denied. The answer of the comptroller denied that the intangible personal property held by the plaintiffs as trustees were assessed by him as a comptroller or by the Railroad Assessment Board of which he was a member. A Master was appointed to take testimony and make findings of law and fact. In one of the most comprehensive reports we have had occasion to examine the master found both law and fact to be in favor of the plaintiffs and held the assessments to be illegal and void.

Exceptions to the master's report were overruled and a final decree was entered by the chancellor confirming the master's report. The final decree not only adjudicated the intangible personal property assessments for the years 1942, 1943, 1944 and 1945 to be illegal and void, it enjoined the Tax

Collector of Duval County from issuing any process or otherwise attempting the collection of said taxes. This appeal is from the final decree.

It may be stated at the outset that there is no attempt here to evade payment of the taxes in question, neither is there any dispute about the amount or classification of the taxes. It appears admitted that the amounts assessed are perhaps correct. The whole controversy here revolves around that of who should legally impose and collect the taxes in question, the taxing officers of Duval County, or the Comptroller or the Railway Assessment Board.

The Comptroller was made a party to the amended bill of complaint because the original bill prayed cancellation of the second item listed above, being a $36.01 assessment on personal property. The said property was furnishings in the general offices of the Trustees for the East Coast Railway Company and their Counsel in the Graham Building in Jacksonville. Section 200.40. Florida Statutes 1941, contemplates that when personal property of this class is in litigation on account of taxes, the comptroller be made a party thereto and there was no objection to making him a party to this suit. In his report the Master held that the tangible personal properties represented by item 2 above, were owned and held by the East Coast Railway exclusively for railroad purposes and under the law were assessible by the Comptroller on the Railway Assessment Board. The Chancellor approved the Master's findings and in his final decree voided the assessments, no assignment of error having been based thereon, the Chancellor's decree became final as to this item.

The question of taxability of the item of tangible personal properties being concluded, there remains nothing to be adjudicated but the assault on the assessment of intangible personal properties detailed in items one, three, four and five above. In our view these items represent properties held and used exclusively for operating purposes and the taxes on them must be assessed and imposed by the Comptroller or the Railroad Assessment Board, and the County taxing authorities of Duval County have no authority whatever to impose taxes on them.

This affirmation is predicated on Section 195.01, Florida Statutes 1941, under which what is commonly known as the unit system from taxing railroad properties was inaugurated. In so far as applicable here, this act requires every "railroad company or street railroad company or sleeping or parlor car company, or the receiver thereof, whose car, track or roadbed, or any part thereof is in this state, shall annually, on or before the first Monday in March, return to the Comptroller of the state, under their oath, the total length of such railroad, the total length and value of such main track, branch, switch and spur track, and side track, lots or parts of lots not leased or rented, and terminal facilities, in this state, and the total length and value thereof in each county, city or incorporated town in this state as of the first day of January. They shall also make return of the number and value of all locomotives, engines, passenger, sleeping, freight, parlor, platform construction and other cars and appurtenances (including shop equipment, tools), stock in warehouse and other personal property used or to be used in connection with the construction, operation or maintenance of the property of the company . . . "

The act further provides that if such returns are not made to the Comptroller in the manner provided, then the Comptroller, Attorney General and the State Treasurer (Railroad Assessment Board) shall assess the properties from the best information available and specify the value thereof to each county and the value of the locomotives, engines, passenger, parlor, freight, platform, construction and other cars and appurtenances shall be apportioned by the comptroller, prorata to each mile of main track, branch, switch, spur track and side track and the Comptroller shall notify the County Tax Assessor of each county through which such railroad runs, the number of miles of track and the value thereof, and the proportionate value of the personal property taxable in their respective counties, special school districts, special road districts and other special districts that may exist.

The gist of the unit system if taxation as so defined, requires that the value of the railroad system as a whole, be first determined and such value is then apportioned or distributed

on the basis outlined to the counties, districts, municipalities, and other governmental units. Its purpose is to treat the physical properties, intangible properties, and capital stock of the railroad as a unit for taxation and to distribute the assessed value thereof to the counties and other units of government in proportion to milage. Such a system is in general use throughout the country and is approved by all the Courts of last resort, including the Supreme Court of the United States. State Railroad Tax Case, 92 U.S. 575, 23 L. ed. 663; Bloxham v. Consumers Electric Light & Street Railway Company, 36 Fla. 519, 18 So. 444; Ellis v. Atlantic Coast Line, 68 Fla. 160, 66 So. 1005; Atlantic Coast Line v. Amos, 94 Fla. 588, 115 So. 315; Lee Comptroller v. Atlantic Coast Line, 145 Fla. 618, 200 So. 71; Columbus Southern Railway Company v. Wright et al., 151 U.S. 470, 38 L. ed. 238, 14 Sup. Ct. 396.

These decisions proceed on the general theory that there is nothing in the constitution prohibiting such a method of assessing railroad taxes and that it is the best means yet devised by which fairness and uniformity of assessments may be approached. It would hardly be reasonable to contend that a public service corporation like a railroad company with its lines extending over a multitude of taxing entities with as many theories of taxation should be put to the annoyance and expense of treating with each of them separately. The Federal decisions uphold the unit system on the theory that it is the best method yet devised to promote equity and uniformity of taxation as contemplated by the constitution. Some phase of it has been in effect in this State for more than seventy-five years.

If the railroad company owns leased or rented properties or properties not used in the operation of its railway system, the local taxing authorities may assess and impose taxes on them, but as to all properties used in and which are essential to its operation, Section 195.01, Florida Statutes 1941, is a complete and exclusive method for taxing them. The statute withdrew the power to tax such properties from the local taxing entities and placed it in the hands of the comptroller or railway assessing board, in order that the properties be treated as a unit and taxed as such.

Chapter 199, Florida Statutes 1941, relating to intangible taxes, is in the same category in so far as it affects intangibles of the railroad companies held and used exclusively for railroad operating purposes. Section 192.03, Florida Statutes 1941, defining personal property for the purpose of taxation, includes "debts due or to become due from solvent debtors whether on assessment, contract note or otherwise, and all public stocks or shares in incorporated or unincorporated companies." This language is ample to cover the assessments in question. In so far as intangible personal property is owned and held by railroad companies for operative purposes, we do not think the intangible tax act made any change in its status. This appears to have been the view of the comptroller and the railway assessing Board and we think it correct.

The Special Master reached a similar conclusion and supported it on the further ground that the intangibles involved in this case have been held and owned by the East Coast Railway Company for many years. Advances on them were made many years ago and their existence and ownership by the railroad company have been reported annually in their statements to the Interstate Commerce Commission of the Florida Railroad Commission for years. They were matters of public record, known to every one, and no attempt has previously been made by the taxing authorities of Duval County to impose taxes on them.

Provision for special rate on intangible personal property was first placed in the constitution as an amendment to Section 1, Article IX, and Chapter 15789, Acts of 1931, was the first act classifying intangibles and authorizing the comptroller to prescribe rules for the administration of the act. The 1931 Act was amended by Chapter 20,724, Acts of 1941, but neither of these acts show any intent whatever to depart from the long established rule requiring the comptroller to assess as a unit all property of railroads "used in connection with their construction, operation or maintenance."

We have not attempted to detail the manner and purpose for which the intangibles in question were acquired. This is fully set out in the bill of complaint. It is enough to say here that the allegations of the bill show that they are used solely

for railroad operating purposes as contemplated by Section 195.01, Florida Statutes 1941, and may be assessed only by the Comptroller. The assessment of them by the Tax Assessor of Duval County is therefore void.

We have examined the cases and the argument relied on by appellants but we do not think they overcame the theory advanced herein to support the authority of the Comptroller and the Railroad Assessment Board. When a system has been in use as long as the unit system of assessing railroad properties has been, and is as universally applied, we would not be authorized to overthrow it except by plain word of the legislature, so providing. This is all the more true when to do so would confuse and revolutionize the whole system of railroad assessments.

The judgment of the Circuit Court is therefore affirmed.

Affirmed.

THOMAS, C. J., CHAPMAN and SEBRING, JJ., concur.