105 So.2d 775 (1958)
SCRIPTO, INC., a corporation organized and existing under the laws of the State of Georgia, Appellant,
v.
Dale CARSON, as Sheriff of Duval County, Florida, and Ray E. Green, as Comptroller of the State of Florida, Appellees.
Supreme Court of Florida.
October 17, 1958.
Rehearing Denied December 3, 1958.
*776 Davisson F. Dunlap (of Adair, Ulmer, Murchison, Kent & Ashby), Jacksonville, and George B. Haley, Jr. (of Smith, Kilpatrick, Cody, Rogers & McClatchey), Atlanta, for appellant.
Barnes, Barnes, Naughton & Slater, Jacksonville, for appellees.
THORNAL, Justice.
Appellant Scripto, Inc., which was plaintiff below, seeks reversal of a final decree adjudging it to be responsible for the collection of a Florida use tax on certain personal property. Appellees Green and Carson, who were defendants below, by cross-assignment of error challenge the correctness of the same decree relieving appellant of the responsibility for collecting the use tax on another class of personal property.
Numerous points are discussed but the major question on which our ultimate judgment turns is whether by the nature of its operation in Florida the appellant Scripto, Inc., has established such jurisdictional contacts as to subject it to certain provisions of Chapter 212, Florida Statutes, F.S.A. the Sales and Use Tax Act.
The problems presented to the Chancellor below and tendered for disposition here arose out of two separate and distinct types of transactions. Scripto, Inc., is a Georgia *777 corporation with is principal place of business in Atlanta. It is not qualified to do business in Florida as a non-resident corporation. It manufactures in Georgia certain writing instruments. It sells these instruments to independent jobbers and wholesalers in Florida, who in turn sell them to retail stores. Scripto employs one Florida salesman who resides in Jacksonville. He solicits orders from the wholesalers primarily by personal contact. The authority of this salesman is to solicit the orders for sale to Florida wholesalers. He forwards the orders to Scripto in Atlanta where they are reviewed for various purposes. The orders are consumated by shipment via interstate commerce f.o.b. Atlanta by common carrier or post. By this means the writing instruments are delivered to the Florida wholesalers who in turn sell them to Florida retailers for retail sales to the ultimate consumer. Scripto maintains no distributing office or other business establishment in Florida. It has no bank account or stock of merchandise or other property in Florida except the accounts owed to it by the wholesalers. In connection with sales by Scripto to Florida wholesalers for ultimate sale at retail, Scripto distributes to such jobbers metal merchandise display containers which contain the mechanical writing instruments sold to the jobbers. These containers subsequently serve to display the writing instruments on the counters of the Florida retailers. No separate charge is made by Scripto for these metal display containers. The price of an assortment of mechanical writing instruments includes the display container "free". The containers are not used or consumed by the wholesaler but rather are re-distributed by him, likewise without additional charge to the ultimate retailer. Scripto retains no title to the display containers nor does it in any fashion require either the wholesaler or the retail dealer to return such containers to it.
The foregoing is a summary of the factual situation which gave rise to one of the problems considered by the Chancellor. The appellee Green, as Comptroller, demanded that Scripto register as an out-of-state dealer under Section 212.06, Florida Statutes, F.S.A. He also demanded that Scripto collect and remit to him the three percent Florida use tax which he contended was due upon the metal display containers which Scripto furnished to the Florida wholesalers when the latter purchased an assortment of mechanical writing instruments for re-sale.
In order to avoid confusion we mention that we are not here concerned with any matter involving the collection of a Florida sales or use tax on these particular mechanical writing instruments. The sole question is whether under the circumstances above summarized Scripto would be required to register as a dealer and collect and remit the Florida use tax on the metal containers.
We next proceed to summarize the factual situation giving rise to the other problem considered by the Chancellor. It is this second situation which produces the major issue before us. As an entirely separate operation Scripto in Atlanta maintains a wholly owned and controlled division or department known as Adgif. Although for purposes of distinguishing the transaction which we now outline from the one summarized above we refer to Adgif as such, it is in actuality merely Scripto, Inc., functioning through one of its own divisions. Adgif with its headquarters in Atlanta, Georgia, is in the business of selling mechanical writing instruments directly to Florida consumers. These instruments contain advertising lettering printed thereon. Adgif, of course, obtains the instruments from Scripto and ships them through interstate commerce direct to Florida customers. These customers do not purchase the writing instruments for resale but rather distribute them free of charge as a means of advertising their respective businesses. Adgif employs no salesman in Florida. The one Scripto salesman in Florida mentioned in the forepart of this opinion renders no service whatever to Adgif. He does not *778 solicit business for them and makes no Florida contacts for them. Adgif products are solicited by some ten independent Florida brokers and commission merchants who sell the products of other manufacturers as well as those of Scripto, via Adgif. Orders for the Adgif products are solicited by these independent Florida jobbers and are mailed directly to the home office of Adgif in Atlanta for acceptance or refusal. If the order is accepted, payment therefor is made by the Florida customer directly to Adgif in Atlanta. In some instances the Florida jobber accepts a check from the customer but this check is also payable to Adgif and is forwarded with the order. The Florida independent jobbers are paid an agreed commission by Adgif for soliciting and obtaining the orders. Like its parent Scripto, Adgif maintains no salesroom or other business establishment in Florida. It has no Florida bank account or stock of merchandise or any other property in Florida except the accounts owed to it by its Florida customers. The "Adgif situation" resulted in the second problem considered by the Chancellor when the appellee Green demanded that Scripto register as an out-of-state dealer under Section 212.06, Florida Statutes, F.S.A. He demanded that Scripto collect and remit to him the Florida use tax on the merchandise sold to Florida customers by Adgif pursuant to the orders taken for Adgif by Florida commission merchants.
The instant case arose when the appellee Comptroller assessed against Scripto a use tax liability in the amount of $5,150.66, including interest and penalties for the years 1953 through 1956. Simultaneously with the assessment the appellee Comptroller issued a distress warrant in the stated amount and delivered the same to the appellee Sheriff of Duval County, Florida for execution against the property of the appellant Scripto. The appellant Scripto promptly filed its complaint in the circuit court seeking a decree of the Chancellor declaring the entire assessment illegal and praying for an injunction against the enforcement of the distress warrant. A stipulation between the parties was submitted to the Chancellor. This stipulation reflected agreement on the facts summarized above.
By his final decree the Chancellor concluded: (1) Scripto is not responsible for the collection and remission of the Florida use tax on the metal display containers in which the mechanical writing instruments were delivered to Florida wholesalers for ultimate delivery to Florida retailers, and (2) Scripto was liable as an out-of-state dealer to collect and remit the Florida use tax on the mechanical writing instruments sold to Florida customers by Adgif through interstate commerce but pursuant to the solicitations and orders taken by Florida commission jobbers in behalf of Adgif.
Scripto has appealed from that aspect of the final decree imposing upon it the duty of collecting the use tax on the Adgif sales. The appellee Green, joined by the sheriff, has cross-assigned error from that part of the final decree holding Scripto not responsible for collecting the use tax on the metal display containers.
Appellant Scripto here contends, as it did in the lower court, that it is not responsible for the collection and remission of the Florida use tax on metal display containers because these containers are furnished to the Florida jobbers without charge; that the transaction constitutes a gift and not a purchase or else the sale is for resale in which the price of the display containers is included in the price of the assortment of writing instruments which it accompanies.
Scripto also contends that neither it nor its subsidiary Adgif is a "dealer" as to Adgif sales within the meaning of Section 212.06(2) (g), Florida Statutes, F.S.A., since in their view they do not solicit Adgif business by "representatives" in the State of Florida. They buttress this contention with the further proposition that if the cited Florida Statute should be construed *779 as comprehending Scripto under the circumstances, then it violates Article I, Section 8 (the commerce clause) and the Fourteenth Amendment of the Constitution of the United States, as well as Section 12 of the Declaration of Rights of the Florida Constitution, F.S.A.
The appellees here contend that the Chancellor committed error in holding Scripto not liable for the collection and remission of the Florida use tax on the metal display containers and, of course, take the position that the Chancellor ruled correctly in imposing upon Scripto the use tax liability in connection with the Adgif transactions.
Reduced to its simpliest terms the nub of the controversy on the first point is whether the transaction involving the metal containers constitutes a sale to a Florida consumer requiring the collecting of a use tax. As to the Adgif transactions, the principal point is whether Scripto has established in Florida jurisdictional contacts sufficient to support the exercise of the taxing power of the state and the imposition of the requirement that Scripto function as the State's tax collector.
We point out for emphasis that we are not here concerned with the collection of the Florida Sales Tax. We should bear in mind that the instant case involves only an effort to collect the Florida Use Tax. There is, of course, a marked distinction between the two because of the nature of the imposts as well as the constitutional basis upon which the two types of taxes are grounded. A sales tax is a form of excise tax imposed on an ultimate consumer for the exercise of the privilege of purchasing property. The State's jurisdiction is supported by the proposition that the transaction takes place within the taxing forum. A use tax, which is the one here involved, is levied on the privilege of using, storing or consuming property purchased. The use tax was developed as a device to complement the sales tax in order to prevent evasion of the payment of the sales tax by the completion of purchases in a non-taxing state and shipment by interstate commerce into a taxing forum. It also evolved as a protective measure for the benefit of retail merchants in the taxing state who would be placed at a competitive disadvantage as against shipments in interstate commerce from a non-taxing state. Obviously also the primary objective to be accomplished by these two complementary forms of taxation is to produce revenues for the operation of the government that protects the exercise of the privilege of making the purchase in one instance and of using, storing or consuming the property purchased in the other instance.
Use taxes generally have been upheld both in theory and in practice. Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814; United States Gypsum Co. v. Green, Fla. 1958; Gaulden v. Kirk, Fla. 1950, 47 So.2d 567; Continental Supply Co. v. People, 54 Wyo. 185, 88 P.2d 488, 129 A.L.R. 217; State Tax Commission v. General Trading Co., 233 Iowa 877, 10 N.W.2d 659, 153 A.L.R. 602.
We now devote our attention to the ruling of the Chancellor holding that Scripto, Inc. was not responsible as a dealer for the collection and remission of the Florida use tax on the metal display containers which were delivered without any separate charge along with an assortment of mechanical writing instruments. The appellant Scripto undertakes to support the ruling of the Chancellor by referring us to Section 212.06(1), Florida Statutes, F.S.A., which provides in part that the sales and use tax at the rate of "three per cent of the cost price, as of the moment of purchase, * * * shall be collectible from all dealers as herein defined * * *." Appellant points out that there must be a purchase by a Florida consumer before any dealer can be required to collect either the sales or use tax. In the absence of a purchase no tax is collectible. We are then reminded that the metal containers *780 are delivered to the Florida wholesalers "free". There being no purchase by a Florida customer there can be no liability for the subject tax. We think the appellant properly points out that in order to justify the requirement of the collection of the use tax, there must be a purchase in the sense of acquiring title for a consideration.
Appellant offers an alternative argument which appears to us to be even stronger in support of the ruling of the Chancellor and one which more nearly comports with the logic and reason of the situation. By this argument it is pointed out that the display container furnished without separate charge is a part of the assortment offered for sale and that the cost of the container is in actuality included in the price of the assortment. When the tax is ultimately collected by the Florida retailer on the sale of the writing instruments then he to that extent collects pro tanto the tax on the metal containers, the price of which has been included in the price paid for the writing instruments. Inasmuch as the tax, according to this argument, is actually collected by the retailer and remitted to the State in the form of a sales tax, the imposition of a use tax as urged by the appellee Comptroller would result in a duplication of the two taxes contrary to the provisions of Section 212.06(4), Florida Statutes, F.S.A.
Referring to the factual statement covering the metal containers it will be recalled that they were furnished by appellant Scripto to Florida wholesalers for resale to Florida merchants who in turn sold the writing instruments at retail. In the view which we take of the instant matter; that is, that obviously the cost of the metal containers was included in the price paid for the merchandise assortment, then the composite assortment including writing instruments and the display container acquired by the Florida wholesaler from Scripto, Inc. was a purchase for resale within the definition of a "retail sale" under Section 212.02(3) (a), Florida Statutes, F.S.A. Under these circumstances there would be no obligation on Scripto to collect and remit the use tax on the composite assortment as sold to the Florida wholesaler.
We, therefore, hold that the Chancellor ruled correctly in concluding that appellant Scripto was not obligated to register as a dealer and collect and remit the Florida use tax on the metal display containers.
The second major point involved in this appeal presents a more difficult problem. It will be recalled that in connection with the so-called Adgif transactions Scripto contends that inasmuch as it has no regular employees or business house, bank account or other property in Florida employed in effecting these sales to Florida consumers, therefore, it has no obligation under the statute to qualify as a dealer and collect and remit the Florida Use Tax. Section 212.06(2) (g), Florida Statutes, F.S.A., contains one of the statutory definitions of a dealer within the contemplation of the sales and use tax law. The cited section reads as follows:
"`Dealer' also means and includes every person who solicits business either by representatives or by the distribution of catalogs or other advertising matter and by reason thereof receives and accepts orders from consumers in the state, and such dealer shall collect the tax imposed by this section from the purchaser and no action either in law or in equity on a sale or transaction as provided by the terms of this section may be had in this state by any such dealer unless it be affirmatively shown that the provisions of this section have been fully complied with." (Emphasis added.)
Scripto advances the argument that it is not a dealer within the last quoted definition for the reason that in connection with Adgif sales it is not represented by any employees in the State of Florida. *781 It appears to be appellant's position that the Florida wholesale jobbers who solicit business in Florida in behalf of the Adgif division of Scripto are not "representatives" within the contemplation of the cited statute. It may be true that these wholesalers are not regular employees of Scripto and in their representation they operate under limited contractual authority. Nevertheless, it appears to us that to the extent of the authority granted to the Florida wholesale jobbers and the services which they render to Scripto in consideration of the commissions to be paid they are representatives of Scripto for the purpose of attracting, soliciting and obtaining Florida customers for the Scripto products. Admittedly, as the result of the solicitations of these ten or more Florida wholesale jobbers, the appellant disposes of substantial volumes of its product into the Florida consumer market. To hold that these Florida wholesalers are not "representatives" of Scripto appears to us to blind ourselves to the practical realities of the relationship between the manufacturer and the wholesaler who solicits business in behalf of the manufacturer for compensation in the form of a commission and as a result of whose efforts the manufacturer is enabled to reach a consumer market that otherwise would not be available to it. We, therefore, hold that Scripto, Inc., is a dealer within the contemplation of Section 212.06(2) (g), Florida Statutes, F.S.A.
Having so held we are next confronted with the contention of the appellant that if the statute is so construed, it contravenes the commerce clause and the Fourteenth Amendment to the Constitution of the United States and Section 12 of the Declaration of Rights of the Florida Constitution. In this regard appellant asserts that the imposition of the use tax against the ultimate use and consumption of its commodity after it comes to rest in Florida constitutes an undue and therefore invalid burden on interstate commerce.
It is further asserted that when the State undertakes to compel appellant Scripto to register as a dealer and collect the use tax under the factual circumstances outlined, such action by the State amounts to a taking of its property without due process.
To meet the assault suggested by the arguments last epitomized we must determine whether the representation of Scripto by the ten or more Florida wholesale commission jobbers in the solicitation of Florida customers produces a sufficient jurisdictional contact between Scripto and the State of Florida as to justify the exercise of the taxing power by the State. We should have in mind that an aspect of the theory supporting the use tax is that it is an impost on the privilege of using personal property which might have been shipped into the State through interstate commerce but which has come to rest in the taxing forum and has become a part of the mass of property with a taxing situs. The tax is imposed on the use after transit in interstate commerce has come to an end. The levy, of course, in actuality is imposed upon and collected from the ultimate Florida consumer who as a Florida resident enjoys the use of the property because of the opportunity afforded by the laws of the State of Florida to exercise this privilege, regardless of the source from whence the property came. We do not lose sight of the organic essential that in the imposition of a tax the lawmaking body is bound to respect jurisdictional limitations in the same fashion that a court must obtain jurisdiction in order to adjudicate the rights of litigants. However, for purposes of enforcing collection of a use tax we are not persuaded by the view that the dealer involved must necessarily be subject to the jurisdiction of the taxing forum to the extent that he would be amenable to suit in that situs. We have the view that even though a dealer is not represented in the taxing state to the extent that service of judicial process *782 on his representative would necessarily bind him to respond in a matter in litigation; nonetheless, he can still be represented by solicitors and limited agents who contact Florida residents to the extent that jurisdictional contacts would thereby be established sufficient to support the enforced collection of the Florida use tax.
We think our position is sustained against the assault directed by the appellant by the opinion of the Supreme Court of the United States in General Trading Company v. State Tax Commission of the State of Iowa, 322 U.S. 335, 64 S.Ct. 1028, 88 L.Ed. 1309. The factual situation in General Trading Company is almost identical to the situation presented here. The sole difference is that in the instant case the appellant was represented by commission merchants who were not on its regular payroll but who nevertheless represented Scripto pursuant to a contract that authorized the Florida merchant to solicit orders and otherwise obtain business for Scripto in Florida in return for compensation to be paid in the form of a commission. The fact that General Trading Company was represented in the taxing state by regularly employed solicitors appears to offer no distinguishing characteristic that would preclude the application of the rule of that case to the situation presented by the case at bar. In General Trading Company, supra, the United States Supreme Court held that there were adequate jurisdictional contacts in the State of Iowa in the person of Iowa solicitors who contacted Iowa consumers in bringing about the sale of the commodities of a Minnesota corporation to support the exercise of Iowa's jurisdiction to collect a use tax on commodities shipped into Iowa from Minnesota in fulfillment of the orders obtained by the solicitors in Iowa. This was held to constitute no unconstitutional impediment to or burden upon interstate commerce. The fact that the Minnesota corporation was required to collect the use tax for the State of Iowa was found to be no deprivation of property without due process.
We might interpolate in passing that the Florida Sales and Use Tax Law contains the customary provisions against duplication of the tax, an allowance to the dealer for making the collection, and a reciprocal credit arrangement which credits against the Florida tax any amount up to the amount of the Florida tax which might have been paid to another state. See General Trading Company v. State Tax Commission, supra.
In the instant case appellant Scripto enjoys the privilege of being represented in Florida by numerous commissioned jobbers. In advancing the business enterprise of the appellant these representatives enjoy the benefits and protection of the laws of the State of Florida. It is no answer to point out that the Florida representatives of the appellant operate and own independent businesses as commissioned jobbers. To the extent that they contact Florida consumers in the interest of advancing appellant's business and in bringing about sales of appellant's commodities to Florida customers they are just as much representatives of the appellant under the subject statute as if they were salaried employee solicitors operating pursuant to identical limitations of contract. Bear in mind that these Florida jobbers represent appellant in Florida pursuant to specific written contracts. We are not persuaded that there is any substance to the contention that the manner in which the appellant arrives at the compensation paid to its Florida representative should distinguish this case from General Trading Company, supra.
We find support for the view which we here take in the opinion of the Court of Appeals of Maryland in Topps Garment Mfg. Corp. v. State of Maryland, 212 Md. 23, 128 A.2d 595, where the Maryland court was confronted with practically the same factual situation presented to us by the case at bar. There, as here, the out-of-state *783 corporation was represented in the State of Maryland only by solicitors who were furnished catalogs and order blanks but who were not on the payroll or under the supervision of the out-of-state corporation for which they solicited orders. In the interest of avoiding further lengthening this opinion we will not undertake to discuss in detail the Maryland decision last cited. It summarizes rather comprehensively practically all of the decisions of the Supreme Court of the United States and other courts on the subject of the enforced collection of a use tax on commodities sold by a non-resident corporation and shipped to a taxing state via channels in interstate commerce. Anyone considering the instant problem might profitably refer to the opinion in the case last cited. Under the almost identical factual situation the Maryland court concluded, as we do here, that the non-resident corporation was bound to collect the Maryland use tax.
We have not ignored the decision of the Supreme Court of the United States in Miller Brothers Co. v. State of Maryland, 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744, relied upon with considerable confidence by the appellant. We think the Miller Brothers Co. case does not control the instant situation. There the only "jurisdictional contact" between Miller Brothers Co., a Delaware corporation, and the State of Maryland was advertising in Delaware newspapers and radio stations that reached the notice of the Maryland residents and the occasional mailing of notices to former customers in Maryland. In Miller Brothers Co. there was no actual solicitation of business in the taxing state by representatives of the Delaware corporation. The non-resident corporation maintained no representation whatsoever in the taxing state. Justifiably, it appears to us, the essential aspects of jurisdictional contact for taxing purposes were lacking.
It is, therefore, our conclusion that in holding that Scripto, Inc. is a dealer within the contemplation of Chapter 212, Florida Statutes, F.S.A., and that as such it should register in the State of Florida as required by that act and collect and remit to the State of Florida through its Comptroller the use tax imposed by the State on the mechanical writing instruments sold to Florida customers by Scripto, Inc. via Adgif, the Chancellor ruled correctly.
The judgment is
Affirmed.
TERRELL, C.J., and THOMAS, HOBSON and O'CONNELL, JJ., concur.