364 So.2d 38 (1978)
FIRST NATIONAL BANK OF BIRMINGHAM, a Federally Chartered Banking Institution with Its Principal Place of Business in Birmingham, Alabama, Petitioner,
v.
DEPARTMENT OF REVENUE of the State of Florida, Respondent.
No. HH-335.
District Court of Appeal of Florida, First District.
October 18, 1978.
Rehearing Denied December 6, 1978.
William Guy Davis, Jr. of Beggs & Lane, Pensacola, for petitioner.
Robert L. Shevin, Atty. Gen., E. Wilson Crump, II, Asst. Atty. Gen., for respondent.
ERVIN, Judge.
First National Bank seeks review of a final order of the Department of Revenue approving an assessment of intangible personal property taxes upon two notes held by the Bank which were secured by mortgages on leaseholds upon real estate in Santa Rosa Island.
In 1971, the Okaloosa Island Authority, a governmental agency, leased certain real property on Santa Rosa Island in Okaloosa County to the Okaloosa Development Corporation for a term of 99 years. Later, *39 certain sub-lessees under the Okaloosa Island Authority lease mortgaged their leaseholds as security for the payment of two promissory notes held by First National Bank. One note, dated January 11, 1974, was in the principal sum of $2,500,000 and the other, dated October 31, 1974, was in the sum of $45,000. The mortgages were recorded without protest and without any claim at that time by the clerk concerning any intangible taxes due and owing. On October 1, 1975, the Department of Revenue proposed an assessment against the Bank in excess of $5,000 for intangible property taxes on the notes pursuant to Section 199.032,[1] Florida Statutes (1975). The Bank attacked the assessment as invalid and sought an administrative hearing. A DOAH hearing officer approved the assessment under 199.032(1), but determined that Section 199.032(2) did not apply because, in his opinion, a leasehold was not real property; however, subsection (1) did apply, and therefore he recommended the imposition of an annual recurring one mill tax. The Bank sought review to the Department of Revenue which disapproved the recommended order and found the assessment valid under subsection (2). It concluded that long term leaseholds constituted neither tangible or intangible personal property, but were rather interests in real property.
The Bank first argues that the intangible tax of two mills is not applicable to obligations secured by mortgages on leasehold interests because leaseholds are not realty. In support of its argument it traces the history of Section 199.032(2) as showing that the Department's interpretation was inconsistent with the legislative intent because, although the first intangible tax act adopted by legislature in Chapter 15789, Laws of Florida (1931), provided that an intangible tax be paid on "all notes . . which are secured by mortgage ... or other leases or liens upon real or personal estates situated in Florida ...", the act was repealed by Ch. 20724, Laws of Florida (1941), which provided that an intangible tax be assessed against "notes ... for payment of money which are secured by mortgage, ... upon real property... ." No reference was made in that act or in subsequent enactments of the intangible tax statute to a tax upon leases. The Bank also relies upon two opinions of the attorney general, 1947 Op. Att'y Gen. Fla. 047-201 and 1960 Op. Att'y Gen. Fla. 060-56,[2] which stated that a leasehold interest under common law was considered personal property. To the same effect, see also Wood v. Ford, 148 Fla. 66, 3 So.2d 490 (1941) and Simpson v. Lofton, 160 Fla. 20, 33 So.2d 230 (1948), which so held. In essence, the Bank's position is that the common law rule affecting leases has not been altered by statute, even though there is no constitutional provision precluding the legislature from so doing; therefore, its interest in the leases was not one in realty. As a result there is no legal authority for the assessment of the intangible personal property tax.
Section 196.001(2), Florida Statutes (1975), first enacted as Chapter 71-133, Section 16, Laws of Florida, subjects all leasehold interests in any governmental property to ad valorem real property taxation. While subsection two does not expressly state that a lease from a governmental body is a real property interest for ad valorem tax purposes, this is a necessary conclusion which must be drawn since subsection two mandates that governmental leases, not used for public purposes, be taxed.
*40 In Park-N-Shop, Inc. v. Sparkman, 99 So.2d 571 (Fla. 1957), the court stated that a leasehold interest in real property was neither tangible nor intangible property and, under the law existing at the time, was not subject to taxation. The court continued, however, it was not aware of any reason why the legislature could not by statute subject such interests to taxation. In answer to the court's observation in Park-N-Shop, Inc. v. Sparkman, supra, the legislature in 1961 enacted Section 192.62, subsequently enacted verbatim as Section 196.25. The statutes were the predecessors to Sections 196.001(2) and 196.199, Florida Statutes (1971). Section 192.62 generally provided that any real or personal property, otherwise exempt from taxation, when used in connection with a profit making venture, be assessed and taxed to the same extent and in the same manner as other real or personal property. As pointed out by Justice Sundberg in Williams v. Jones, 326 So.2d 425, 435 (Fla. 1976), the language used in 192.62(1) which permitted a lease to be taxed "to the same extent and the same manner as other real or personal property" allows judicial interpretation. Section 192.62 and its successor statutes have been interpreted by the courts on numerous occasions as authorizing the assessment of ad valorem real property taxes upon leases. For example, in Hillsborough County Aviation Authority v. Walden, 210 So.2d 193 (Fla. 1968), the court approved a trial court's determination that a leasehold interest of a motel operator from a tax exempt body was a separate, distinct interest in such property and, since it was being used for a predominantly private purpose, was subject to assessment and taxation as real estate to the lessee. Later, in Dade County v. Pan American Airways, Inc., 275 So.2d 505 (Fla. 1973), the court observed that Section 192.62 was enacted by the legislature in 1961 for the purpose of imposing ad valorem real property taxes upon public property which had been exempt or immune from taxation but which was being used by private lessees involved in profit making ventures. The successor statute to 192.62, Section 196.25, was repealed by Ch. 71-133, § 15, Laws of Florida, but certain of its provisions were replaced in Sections 196.001 and 196.199, Florida Statutes (1971), and apply to the transactions before us.
The subject of ad valorem taxes upon leases as real property was comprehensively treated by the Supreme Court in Williams v. Jones, supra, and the reader is directed to that opinion for the various types of situations which state that leaseholds are interests in realty. Williams v. Jones, supra, at 433-434. We recently held in Department of Revenue v. Dix, 362 So.2d 420 (Fla. 1st DCA, August 30, 1978), that a lease is a conveyance of an interest in land which may be subject to the purview of the Documentary Stamp Tax Act, Section 201.02(1), and that the assignee of a lease in realty who also assumes a mortgage upon the leasehold interest is subject to the payment of documentary stamps upon the recording of the lease.
The common thread running throughout later opinions of the Florida Supreme Court on the subject, e.g., Straughn v. Camp, 293 So.2d 689 (Fla. 1974); Williams v. Jones, supra; Volusia County v. Daytona Beach Racing, etc., 341 So.2d 498 (Fla. 1976), is that holders of leases upon publicly owned lands used for private purposes must bear their fair share of the tax burden to the same extent as owners of real property in the private sector, and that all property is subject to taxation unless expressly exempted. Since private owners of real property are subject to ad valorem taxes upon real estate, and the holders of notes upon mortgages secured by such real property are subject also to intangible personal property taxes, there is no logical reason why real property owned by a governmental authority, but leased for private purposes, which bears a burden for ad valorem property tax purposes, should not also be subject to the tax burden imposed by Section 199.032(2) on notes secured by mortgages upon such leases. There is no legislative vacuum as contended by the Bank. The legislature has spoken. The leases are an interest in realty and as such are subject to the tax imposed by Section *41 199.032(2) upon recordation of the mortgages encumbering the leases.
The Bank argues in the alternative, if it is determined that Section 199.032(2) is applicable, the Department of Revenue is estopped from assessing or collecting the intangible property tax because the clerk of the circuit court, when the two mortgages securing the notes were presented for recordation, recorded them without first requiring the payment of the tax as provided by Section 199.052(7). It was argued at the hearing, although no proof was presented, that the Bank and the clerk relied upon two opinions of the attorney general, 1947 Op. Att'y Gen. Fla. 047-201 and 1960 Op. Att'y Gen. Fla. 060-56, which stated that a leasehold interest was considered personal property. The Bank also argued that it relied on a rule of the Department of Revenue, Fla. Admin. Code R. 12B-2.06(7), in effect at the time the mortgages were recorded, which exempted leases of realty from taxation. The Bank's brief states that if it had been aware of its liability to pay an intangible personal property tax on notes secured by leases, it would have shifted its burden to the mortgagor "by contractual agreement in conformity with the custom prevailing throughout the state." It continues that having relied upon the opinions and rules of the Department of Revenue, it is unable now to transfer its burden since the mortgages have been recorded and one was in fact cancelled.
The Bank relies primarily upon George W. Davis and Sons v. Askew, 343 So.2d 1329 (Fla. 1st DCA 1977), where we held that because of two inconsistent opinions by our court, the Department of Revenue was estopped from assessing and collecting an admissions tax from an owner of a party fishing boat on its operations from the date of our first opinion holding that the admission tax laws did not apply until the date of the mandate in the second case requiring the payment of such tax. We are unpersuaded by the purported analogy of Davis to the case before us. First, an admissions tax, like the sales tax, is collected on behalf of the state by the operator, and it is in effect a form of excise tax upon the customer for exercising his privilege of purchasing the admission. Scripto, Inc. v. Carson, 105 So.2d 775 (Fla. 1958). The Bank, however, as holder of the note, is by law required to pay the intangible tax. While it may be banking custom through the state to transfer the holder's burden to the borrower, no proof was presented by the Bank of such practice and the record is devoid of such evidence. We are asked to assume upon a silent record that the Bank would require the borrower in all circumstances to pay the tax; that it would collect the money from him and then pay it over to the appropriate agent of the state. This we will not assume.
There are other factual distinctions between the two cases. In Davis, it was recited that the Revenue Commission made direct representations to the fishing boat operator that it would not attempt to enforce collection of the admissions tax upon his operations so long as the opinion of our court was in effect holding the inapplicability of the tax. No such representations were directly made here by the Department to the taxpayer.
It is only in very exceptional circumstances that the rule of estoppel may be imputed to the state in taxation matters. 68 Am.Jur.2d, Sales and Use Taxes, § 162. For example, a rule or regulation of a state tax commission purporting to exempt a taxpayer from the payment of his tax, where no authority to do so was granted to it by the legislature, cannot operate as an estoppel against the state to collect such tax in the case of transactions which have closed so that the seller cannot collect the tax from the purchaser. Id. The above rule was applied by the Florida Supreme Court in an action where a taxpayer sought to estop the state comptroller from collecting documentary stamps upon the transfer of certain shares of stock in North American Company v. Green, 120 So.2d 603 (Fla. 1959). The court there said:
We have not overlooked the contention of the appellant that the appellee Green is estopped to collect the subject tax because *42 of his earlier administrative decision to rely on an opinion of the Attorney General to the effect that the tax was not collectible. The instances are rare indeed when the doctrine of equitable estoppel can effectively be applied against state action. It will be invoked only under very exceptional circumstances. Id. at 610.
The court concluded that the circumstances were not so egregious as to permit the imputation of estoppel to the state. To the same effect, see Dominion Land and T. Corp. v. Department of Revenue, 320 So.2d 815 (Fla. 1975), and Austin v. Austin, 350 So.2d 102 (Fla. 1st DCA 1977). In the latter case, the surviving spouse of a deceased state employee brought an action seeking state retirement benefits as a beneficiary of the employee and contended that the Division of Retirement should be estopped from refusing to pay her such benefits because the Division caused to be issued a pamphlet which had erroneously stated that a surviving spouse could receive benefits even if she were not a designated beneficiary. The court, in rejecting the wife's argument, broadly stated: "Administrative officers of the state cannot estop the state through mistaken statements on the law." 350 So.2d at 105. In conclusion, we are of the view that the circumstances of this case are not such as to justify any theory of estoppel against the state.
The Bank argues also that the assessment is void as to one of the mortgages since it was made beyond the statute of limitations. It relies upon Section 199.232(4), providing that no assessment shall be made, except pursuant to investigation, after the expiration of three years from the due date for the filing of a return or the date of filing. It argues that if the Bank was liable for the payment of the two mill tax, its liability commenced as of the date the first mortgage was recorded on January 14, 1974, and since three years have passed without the Department making any final assessment, the statute of limitations expired and no assessment can now be imposed.
The final order of assessment was not issued by the governor and cabinet of the state until after the expiration of three years from the date of the mortgage's recording. However, well within the three year period, or on October 1, 1975, the Department of Revenue notified the Bank that it had proposed an assessment against it in excess of $5,000 for intangible property taxes upon the notes. The notice of proposed assessment advised that the assessment would become final within 60 days of receipt unless conferences and hearings were requested by the Bank. The Bank exercised its option by protesting the proposed assessment. As a result, we consider the statute of limitations was suspended during the time necessary to exhaust the administrative procedures which the Bank invoked.
We have examined the remaining points urged by the Bank and consider them without merit.
The final assessment is AFFIRMED.
MILLS, Acting C.J., and MELVIN, J., concur.
NOTES
[1] Section 199.032(1) and (2) provides:

(1) An annual tax of 1 mill on the dollar of the just valuation of all intangible personal property, except money as defined in s. 199.023(1)(a), and except notes, bonds, and other obligations for payment of money which are secured by mortgage, deed of trust, or other lien upon real property situated in the state;
(2) A nonrecurring tax of 2 mills on the dollar of the just valuation of all notes, bonds, and other obligations for payment of money which are secured by mortgage, deed of trust, or other lien upon real property situated in the state.
[2] A later attorney general's opinion, 1974 Op. Att'y Gen. Fla. 074-350A, took a contrary position and stated such interests, because of statutes then in existence, were realty.